SHERYL L. WRIGHT & others[1] *vs.* CITY OF LAWRENCE.

Essex.   November 20, 1985. — December 27, 1985.

Present: BROWN, KAPLAN, & WARNER, JJ.

*Practice, Civil*, Declaratory proceeding. *Jurisdiction*, Taxable inhabitants' action, Declaratory relief. *Open Meeting Law.*

An action by ten registered voters of the city of Lawrence seeking a declaration that they were entitled to make audio-visual recordings of meetings of the city council was to be dismissed without a decision on the merits, where failure of the plaintiffs to notify the Attorney General as required by G. L. c. 231A, § 8, had the effect of eliminating their constitutional claims from the case; where other claims, based on the city charter provision concerning public meetings, had not been argued; and where the issues arising under the open meeting statute, G. L. c. 39, § 23B, to the extent that they were presented on the record, were more appropriate for legislative settlement than for judicial determination. [344-348]

CIVIL ACTION commenced in the Superior Court Department on July 13, 1984.

The case was heard by *Peter F. Brady*, J.

*Neal H. Sahagian* for the plaintiffs.

*Robert J. O'Sullivan*, Assistant City Solicitor, for the defendant.

*Thomas J. Dougherty*, for WBZ-TV4, amicus curiae, submitted a brief.

KAPLAN, J.   Ten registered voters of the city of Lawrence sued the city for a declaration that they were entitled to record on video (i.e. audio-visual) tape the public (i.e. nonexecutive) meetings of the city council. It was understood that the judge of the Superior Court would decide the case on the basis of the admitted facts, as disclosed by the pleadings and answers

---

[1] The named plaintiff and nine others are registered voters of the city of Lawrence.

to interrogatories. The material facts may be summarized thus. On December 20, 1983, the council allowed representatives of two unions to tape record (evidently meaning sound record) public meetings of the council in which they were interested. However, on July 3, 1984, the council refused them permission to videotape such meetings. If the plaintiff voters applied to the council for permission to do the same, the council would deny the application. The judge added, on the basis of personal observation, that videotaping could by means of suitable apparatus be so accomplished as to avoid active interference with the meetings. On the case thus posited, the judge held for the defendant city, and the voters appeal from the judgment.

The case reaches us upon a record that is unsatisfactory in its legal as well as its factual aspects. Especially is it unsatisfactory because in one of the branches of the case the plaintiffs claimed a declaration on constitutional questions.

The amended complaint by its several counts sought an interpretation of a city charter provision about public meetings; an interpretation or extrapolation of the State open meeting statute; and, finally, failing both these lesser grounds of declaration, a declaration of constitutional rights. The ground of jurisdiction alleged for a suit by the ten voters was G. L. c. 43B, § 14(2), inserted by St. 1966, c. 734, § 1.[2] This statutory provision could apply, if at all, only to the claim based on the charter provision; but that claim evidently was aban-

---

[2] Section 14(1) and (2) are as follows:

"(1) the superior court shall, upon petition of ten or more registered voters or of the attorney general, have jurisdiction in equity to enforce the provisions of this chapter.

"(2) The provisions of chapter two hundred and thirty-one A applicable to municipal by-laws or ordinances shall apply to charters, charter revisions, charter amendments, by-laws and ordinances of a city or town adopted under this chapter. In addition, a petition for declaratory relief under chapter two hundred and thirty-one A may be brought on behalf of the public by the attorney general or, by leave of the court, by ten or more registered voters of the city or town. In the case of a petition brought by ten registered voters, the attorney general shall be served with notice of the preliminary petition for leave, and may intervene as a party at any stage of the proceedings; and the petitioners shall be liable for, but may in the court's discretion also be awarded, costs, which may include reasonable counsel fees."

doned; it is not pressed in the briefs.[3] If the case is considered, alternatively, as simply a suit by individuals for a declaration under the declaratory judgment chapter, G. L. c. 231A, upon the remaining claims or theories alleged, we find a violation of § 8 of that chapter in that it does not appear of record that the Attorney General was notified and given an opportunity to be heard with respect to the constitutional phases of the suit. As recently stated in *Shell Oil Co.* v. *Revere*, 383 Mass. 682, 684 (1981), "Such notice and opportunity to be heard are 'conditions precedent to the entry of a declaratory decree.' *Court St. Parking Co.* v. *Boston*, 336 Mass. 224, 226 (1957)." Cf. *Lowell* v. *Boston*, 322 Mass. 709, 740-741 (1948); *City Manager of Medford* v. *Civil Serv. Commn.*, 329 Mass. 323, 330 (1952). Strictly, this would eliminate from the suit the constitutional claims, leaving only the claim under the open meeting statute, G. L. c. 39, § 23B, which, as we shall see, is transparently feeble.

Quite apart from this, the showing on the facts lacks definiteness or precision. It is not made clear what was the ground of the action taken by the council on July 3, 1984; for aught that appears of record, it may have been an ad hoc decision responsive to a particular occasion and not intended as a prescription of a rule. As to the particular plaintiffs, there is no indication of record that they or any of·them have ever presented themselves at a council meeting and demanded video rights and elicited action of any sort by the council. While an answer to an interrogatory indicates that the plaintiffs would be refused permission, this was hypothetical and the putative ground was left unexplained.[4] A certain amount of "iffiness" can be tolerated in declaratory actions, see *American Mach. & Metals, Inc.* v. *DeBothezat Impeller Co.*, 166 F.2d 535, 536 (2d Cir. 1948), but more than a modicum of contingency is highly un-

---

[3] It does not appear of record that notice of the preliminary petition was given to the Attorney General, as required by § 14(2). See our text immediately below about the like notice required by the declaratory judgment law.

[4] The trial judge complained that the council offered no explanation of its position.

desirable in constitutional litigation which has a potentiality for major consequences across the Commonwealth.

The factors mentioned incline us to dismiss the present suit without decision on the merits. In candor, we add that the substantive problem seems to us at this time appropriate for legislative (or executive) settlement, not for judicial decision. With respect to the open meeting law, the plaintiffs have asked the court to derive from the statute, which in terms creates a right to sound recording of public meetings,[5] an additional right to audio-visual recording (and broadcast). There are indeed cases where the "equity" of a statute may be perceived to justify the recognition of a right extending beyond the statute's bare words. In the present case, however, we believe, in agreement with the trial judge, that extension is for the Legislature. Similarly, it appears quite improbable that the United States Supreme Court would be disposed to anticipate the State or local legislative process and hold that the public's constitutional right to "know" includes a right to have the knowledge conveyed by the particular video or television medium. The full discussion in the recent case of *Westmoreland* v. *CBS, Inc.*, 752 F.2d 16 (2d Cir.), aff'g 596 F. Supp. 1166 (S.D.N.Y. 1984), cert. denied sub nom. *Cable News Network, Inc.* v. *United States Dist. Court for the So. Dist. of N.Y.*, 472 U.S. 1017 (1985), although addressed to the question of television coverage of a civil trial in Federal court, not the meetings of a local legislative body, is highly suggestive of the current attitude of the highest court toward a case like the present.[6] See also *United States* v. *Hastings*, 695 F.2d 1278

[5] General Laws c. 39, § 23B, as appearing in St. 1976, c. 397, § 6, provides in part: "A meeting of a governmental body may be recorded by any person in attendance by means of a tape recorder or any other means of sonic reproduction except when a meeting is held in executive session; provided, that in such recording there is no active interference with the conduct of the meeting."

[6] The *Westmoreland* libel case, involving matters of high national importance, and commanding great general interest, could be thought to make exceptional appeal for direct television coverage (the parties consenting and the trial judge strongly favoring). Such invasion of the courtroom, however, was prohibited by a rule of the District Court, which was in turn supported by a canon of the Code of Judicial Conduct for United States Judges. It may

(11th Cir. 1983); *United States* v. *Yonkers Bd. of Educ.*, 747 F.2d 111 (2d Cir.), cert. denied sub nom. *Post-Newsweek Stations, Fla., Inc.* v. *United States*, 461 U.S. 931 (1983). The Supreme Judicial Court may also be expected to let the local legislative process take its course without any thought of constitutional compulsion. The court's deliberate approach to "cameras in the courtroom" and its final approval of a careful set of guidelines (see SJC Rule 3:09, Code of Judicial Conduct, Canon 3[A] [7]), as appearing in 387 Mass. 1218 [1983]),[7] suggests that it did not conceive it was responding to an imperative of the constitution, and it might well see the present case as no more meet for constitutional intrusion.[8]

There may come a time when sound cameras will be so thoroughly accepted, and any idea that they could distort or prejudice deliberation or offend decorum so anachronistic, that to bar them would seem the equivalent of prohibiting pencil and paper. Perhaps then the Constitution might be involved — but at that stage the compelling effect of public opinon will have been felt and a constitutional exercise will be unnecessary.[9]

---

be noted that Rule 53 of the Federal Rules of Criminal Procedure is also prohibitive as to criminal trials.

[7] For the evolution of the canon, effective January 1, 1983, after experimentation that began in 1980, see the report dated July 16, 1982, of the Advisory Committee to Oversee the Experimental Use of Cameras and Recording Equipment in Courtrooms.

[8] Certain of the conventional objections to television and like coverage of court proceedings (see the enumeration in the *Westmoreland* case, 752 F.2d at 23 n.10) may not apply to sound cameras at legislative proceedings, but in a constitutional view it is peculiarly hard to accept control by the judiciary of the details of the conduct of legislative meetings.

[9] We omit discussion of cases that have been cited to us, appearing in a variety of circumstances and with various results. They are not persuasive that, if the issues had to be met on the merits in the present appeal, we should declare in favor of a wide interpretation of the open meeting statute or the existence of the claimed constitutional right. See, e.g., *CBS, Inc.* v. *Lieberman*, 439 F. Supp. 862 (N.D. Ill. 1976); *Belcher* v. *Mansi*, 569 F. Supp. 379 (D.R.I. 1983); *Dean* v. *Guste*, 414 So.2d 862 (La. App. 1982); *Sigma Delta Chi* v. *Speaker, Maryland House of Delegates*, 270 Md. 1 (1973); *Maurice River Township Bd. of Educ.* v. *Maurice River*

If the city council of Lawrence means as a matter of rule to exclude the plaintiffs' video equipment from the chamber, the plaintiffs' recourse is not to go to court but to stir debate on the issue before the council and elsewhere.

The judgment is vacated and the action is dismissed.

*So ordered.*

---

*Township Teachers Assn.*, 193 N.J. Super. 488 (1984), modifying 187 N.J. Super. 566 (1982).