CITY OF BOSTON *vs.* SHIRLEY JAMES, administratrix.[1]

No. 87-1265.

Suffolk.   October 13, 1988. — December 5, 1988.

Present: ARMSTRONG, KAPLAN, & DREBEN, JJ.

*Taxation,* Real estate tax: foreclosure of right of redemption. *Due Process of Law,* Notice. *Land Court,* Vacation of judgment.

Where a municipality, seeking to foreclose rights of redemption after having acquired a tax title to a certain parcel of real estate, did not make a conscientious and reasonably efficient effort to provide notice of the proceedings to the owners of the property, the application of the owners, who had received no notice, to vacate the final foreclosure decree was properly granted upon the condition that the taxes due, plus interest and costs, be paid. [628-630]

An application to vacate a decree of foreclosure that was not filed within the one year period prescribed by G. L. c. 60, § 69A, was nonetheless timely where it was based on a substantiated claim of denial of due process and was filed without delay after the owner of the property learned of the foreclosure. [630]

PETITION filed in the Land Court Department on September 22, 1983.

A motion to set aside a final decree of foreclosure was heard by *Robert V. Cauchon,* J.

*Thomas M. Dailey (Henry C. Dinger* with him) for Shirley James, administratrix.

*Patrick J. Costello,* Assistant Corporation Counsel, for city of Boston, submitted a brief.

KAPLAN, J.   After acquiring a tax title (see G. L. c. 60, § 37) to a property in Dorchester, the city of Boston brought a petition to foreclose rights of redemption therein (see § 65) and attempted to serve process (see § 66) upon the owners of

[1] Of the estate of Gladys James.

the equity, Reverend Claude James and Gladys James. After entry of a final decree of foreclosure, Gladys James, as surviving owner, moved to set aside the decree for the reasons that neither she nor her (now deceased) joint owner had in fact received any notice of the foreclosure proceedings and that the attempt to make service was so ineffectual as to deprive her of due process of law. She offered, as a condition of securing relief, to make good the arrears. A judge of the Land Court, upon findings of fact and a conclusion of law, allowed the motion on the condition mentioned. The city of Boston appeals. We affirm.

We follow the findings, supplemented by details from the record appendix.

Upon the filing of the foreclosure petition on September 22, 1983, the court as required by G. L. c. 60, § 66 (quoted in part in the margin),[2] appointed an examiner who, on March 6, 1984, rendered a report of examination of title. On the first sheet, the report listed owners and mortgagees. Reverend Claude James and Gladys James were shown as the owners and under their names appeared "400 Columbus Avenue, Boston." This owners' entry referred the reader to sheet 3 and instrument 7. Shown there was note of a quitclaim deed to the two persons "as joint tenants, both of 4 Waterlow Street, Dorchester, MA 02124."

The city of Boston attempted service by certified mail, return receipt required, to the owners at 400 Columbus Avenue, Boston, and to them also at 9 Inwood Street, Dorchester, the latter appearing on the examiner's report as the address of the property involved. These attempts failed; the record exhibits a copy

---

[2] Section 66 provides: "Upon the filing of such a petition the court shall forthwith cause to be made by one of its official examiners an examination of the title sufficient only to determine the persons who may be interested in the same, and shall upon the filing of the examiner's report notify all persons appearing to be interested, whether as equity owners, mortgagees, lienors, attaching creditors or otherwise, of the pendency of the petition, the notice to be sent to each by registered mail and return of receipt required, the addresses of respondents, so far as may be ascertained, being furnished by the petitioner. Such other and further notice by publication or otherwise shall be given as the court may at any time order. . . ."

of the mailing to 9 Inwood Street postmarked September 28, 1984, and stamped "Attempted Not Known." As far as appears, the owners never lived at either address.

In January, 1985, the city acknowledged the unsuccessful service and informed the court that "further investigation" revealed that the two owners could be served at 4 Waterlow Street. "Special notice" was attempted by certified mail, return receipt required, to the owners at that address. This attempt failed; the mailing, postmarked February 19, 1985, was stamped "Unclaimed." In fact, although both persons had resided at the Waterlow address from 1969 onward, a period comprising, more particularly, the time when service upon them was vainly attempted at the Columbus Avenue and Inwood Street addresses, by 1985 they had left Boston and moved to Pennsylvania, the move being occasioned by the grave illness of Reverend Claude James.

In May, 1985, the city acknowledged this unsuccessful service. It stated that Claude James and Gladys James were husband and wife and that Claude had died on November 26, 1966, and it proposed that "sheriff service" be made on Gladys James at the Waterlow Street address. The year 1966 was fourteen years before the acquisition of the property by Reverend Claude James and Gladys James, as shown in the examiner's report. The deceased Claude was the husband of Gladys James; Reverend Claude was Gladys's son.[3]

On July 15, 1985, the sheriff service on Gladys James was attempted by leaving notice at the Waterlow Street address as her supposed "last and usual place of abode." This of course was futile; there was no response.

Upon the city's motion for general default of September 26, 1985, a final decree of foreclosure was entered dated January

---

[3] A listing in the Polk's City Directory showing Claude and Gladys James at the Waterlow address may have been the basis of the city's January and May, 1985, acknowledgements to the court. That the Waterlow Street address appeared in the examiner's report may have been overlooked throughout.

31, 1986. Gladys filed her motion to vacate the decree on June 15, 1987.[4]

1. If the city had not attempted to notify the owners named in the examiner's report, a decree of foreclosure purporting to bind these owners would deprive them of due process. See *Christian* v. *Mooney*, 400 Mass. 753, 761 (1987), appeal dismissed & cert. denied sub nom. *Christian* v. *Beweks*, 484 U.S. 1053 (1988), referring to *Mennonite Bd. of Missions* v. *Adams*, 462 U.S. 791 (1983). The owners claim that the notification actually attempted was so deficient and uninforming as to call for the like result.

In the case of *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), Justice Jackson wrote: "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314. "But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id.* at 315.[5]

The city of Boston did not carry out this duty of making a conscientious and reasonably efficient effort to provide notice to the owners. The examiner's report pointed clearly to the Waterlow address, but this was ignored. Had that address been used at the time service was first attempted, all difficulty would have been avoided. The city was chargeable with knowledge that people have a propensity for changing residences; hence the chance of actually reaching a person by mailed notice tends to diminish with time. Here certified mail addressed to Waterlow Street was not used for seventeen months after the institu-

---

[4] Reverend Claude James had died on August 28, 1986. Gladys James died on August 31, 1988, and Shirley James, her daughter, has become her administratrix and is substituted as defendant, see note 1.

[5] The requirement stemming from *Mullane* is formulated thus in Restatement (Second) of Judgments § 2(1)(b) (1982): "[N]otice is adequate only if . . . [t]he notice is transmitted in a manner that actually notifies the person being addressed or someone who can adequately represent him, or has a reasonable certainty of resulting in such notice."

tion of the foreclosure proceedings, eleven months after the filing of the examiner's report, and five months after the failure of the first attempted service. When that mailing failed, the city ceased any meaningful activity and (still at a leisurely pace) indulged in the formal "gesture" of sheriff service, known in advance to be a futility — a method indeed less promising of any result than publication might have been.[6]

It is true that where more efficacious service is shown to be unattainable within reason, publication (or the like) may be held adequate as due process. *Mullane*, 339 U.S. at 317. Here the showing is lacking: the city is chargeable with flaccid behavior up to the point of the "unclaimed" mailed notice to Waterlow Street; added to this is its omission, after that failure, to follow any plausible lead to the owners' whereabouts. There is no indication that the city made an effort to reach the mortgagees of the property who might be expected to know about the owners' location: the addresses as well as the names of the mortgagees of two mortgages on the property appeared in the very examiner's report. There was surely a duty to pursue any suggestive source or piece of information disclosed in the papers the city had immediately in hand. The cases, indeed, suggest a duty according to particular circumstances to go further and consult public records or make other ordinary, simple inquiries. Cf. *Schroeder* v. *New York*, 371 U.S. 208, 210 (1962); *Mennonite Bd. of Missions* v. *Adams*, 462 U.S. at 798 n.4; *Matter of Jones*, 379 Mass. 826, 836 (1980); *Giacobbi* v. *Hall*, 109 Idaho 293, 297-298 (1985); *Chapin* v. *Aylward*, 204 Kan. 448, 454 (1970); *Schwartz* v. *Dey*, 665 S.W.2d 933, 935 (Mo. 1984).

We are mindful that there are stern limits on the resources the city can be expected to apply to perfect the foreclosure of a single property, and mindful, too, of the danger of unsettling titles by allowing indiscriminate attacks on final decrees of foreclosure. See *Sharon* v. *Kafka*, 18 Mass. App. Ct. 541, 543

---

[6] The statute, G. L. c. 60, § 66, after directing notice by mail, speaks of notice by publication or otherwise as the court orders. This is so loosely prescriptive that we are back to the question of what is lawful notice in the circumstances.

(1984). The present situation, however, appears to us, as evidently it did to the judge of the Land Court, to be peculiarly worthy of remedy for these uninformed owners.

2. The city of Boston tries to blunt or circumvent criticism of its own fecklessness by suggesting that the owners brought trouble on themselves by failing to pay the taxes, or to leave a forwarding address, or to establish formally under G. L. c. 60, § 39, an address at which service might be made. Such shifting of responsibility is inadmissible even when the persons deprived of notice are sophisticated and knowledgeable. As the Court said in *Mennonite Bd. of Missions* v. *Adams*, 462 U.S. at 799, in the course of an opinion applying the *Mullane* principles, "[A] party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation." The same thought occurs in *Christian* v. *Mooney*, 400 Mass. at 761 & n.10 (questioning *Guaranty Mortgage Corp.* v. *Burlington*, 385 Mass. 411, 419 [1982], in the light of the *Mennonite* case).

3. It may assist in the resolution of this case to recall what was said in *Lynnfield* v. *Owners Unknown*, 397 Mass. 470, 474 (1986): "[T]he only legitimate interest of a town in seeking to foreclose rights of redemption is the collection of the taxes due on the property, together with other costs and interest. When an owner of property taken for the nonpayment of real estate taxes comes forward with sufficient funds to redeem the property, the purpose of the statute has been fulfilled." Here the owners have offered to make good the taxes, interest, and costs, and the order appealed from is conditioned on the payment.

4. Under G. L. c. 60, § 69A, an application to vacate a decree of foreclosure must have been made within a year of the decree. Here the period was exceeded, but it is settled that the time limit does not apply where the application is an extraordinary one grounded on a claim of breach of due process and the claim is substantiated. See *Christian* v. *Mooney*, 400 Mass. at 760; *Sharon* v. *Kafka*, 18 Mass. App. Ct. at 544. There is no claim that the owners delayed in making their motion after they learned of the foreclosure.

*Order affirmed.*