GERD C. TESCHKE vs. MARITA M. KELLER & others.[1]

No. 93-P-398.

Suffolk. May 19, 1994. - June 12, 1995.

Present: DREBEN, JACOBS, & PORADA, JJ.

*Real Property*, Attachment, Mortgage, Sale. *Statute*, Construction. *Due Process of Law*, Notice.

A Land Court judge correctly determined that, under G. L. c. 223, § 66, an attachment (and subsequent execution and sheriff's sale) did not have priority over a certain mortgage interest, where the writ of attachment did not set forth the name of the owner as it appeared in the records and indices at the registry of deeds. [631-632]

The statutory notice of a sheriff's sale under G. L. c. 236, § 28, with respect to the interests of a junior mortgagee of real estate whose identity was readily ascertainable on public records and who was neither given notice nor had actual knowledge of the sale, violated the due process clause of the Fourteenth Amendment of the United States Constitution, and the mortgage, although junior to the sheriff's attachment, remained in force after the sale. [632-635]

CIVIL ACTION commenced in the Land Court Department on August 12, 1988.

The case was heard by *Marilyn M. Sullivan*, J.

*John J. Ruby, Jr.*, for the plaintiff.

*Jeffrey L. Ontell* for First American Title Insurance Co.

JACOBS, J. This appeal derives from a misplaced hyphen in a writ of attachment. The plaintiff (Gerd), relying on a sheriff's deed, brought this action[2] to obtain possession of the attached real estate (the premises). He appeals from a judgment of the Land Court that he is not entitled to possession

---

[1]Meritor Credit Corporation and University Mortgage Services, Inc., holders of mortgages that are the subject of this action and which were assigned to First American Title Insurance Co. after the relevant events.

[2]The action is brought pursuant to G. L. c. 237, which provides generally for civil actions for recovery and possession of real estate.

as against the defendants, Meritor Credit Corporation (Meritor) and University Mortgage Services, Inc. (University), holders of mortgages on the premises.[3] The Land Court judge concluded that Gerd's attachment of the real estate of the defendant, Marita M. Keller (Marita), did not have record priority over Meritor's mortgage interest because the attachment was not in the same name as appeared in the deeds by which Marita acquired title. The judge also determined that University's interest was junior to the attachment by operation of the principle of constructive notice but that its mortgage nevertheless remained in force following the sheriff's sale enforcing the attachment because she found the sheriff's sale to be "constitutionally infirm." We affirm.

The facts are as stipulated by the parties and supplemented by findings of the judge and trial exhibits in the record. By deed dated in 1971, recorded and indexed[4] in the Middlesex South registry of deeds (registry), the premises, located in Newton, were conveyed to "Gerd Teschke and Marita Keller Teschke, husband and wife."[5] In 1982, the marriage of Gerd and Marita was terminated by a divorce judgment that expressly permitted Marita to resume her maiden name of "Marita Margarethe Keller." Incident to a separation agreement incorporated in the divorce judgment, a deed to the premises was recorded with the registry in 1982, in which the grantors were described as "Gerd Teschke and Marita Keller-Teschke," and the grantee as "Marita M. Keller." In 1985, Gerd filed suit against "Marita Keller-Teschke" in the Superior Court seeking enforcement of the financial terms of the separation agreement and placed on record at the registry a related writ of attach-

[3]To the extent the judgment recognized the plaintiff's right of possession against Marita M. Keller, it is not contested before us. This action was brought more than one year after the sheriff's sale, and, therefore, after Marita's right of redemption was foreclosed. See G. L. c. 236, § 33.

[4]Registers of deeds are required to maintain grantor and grantee indices pursuant to G. L. c. 36, §§ 25 & 26.

[5]The judge noted "[t]here was a hyphen in [Marita's] name in the grantee clause as it originally was typed, but it was stricken before recording . . . . Accordingly this instrument was indexed only as Teschke as grantee. . . ." This observation is not contested on appeal.

ment applicable to the "goods or estate of defendant Marita M. Keller-Teschke." The registry indexed the attachment only under the name "Keller-Teschke" in its grantor index.

In March, 1987, a mortgage document which stated that "Marita M. Keller" had mortgaged the premises to Meritor to secure the payment of $100,013.92 was recorded at the registry. The mortgage instrument contained a book and page title reference to the 1982 deed to Marita. In April, 1987, a Superior Court execution in the amount of $39,611.78[6] was recorded at the registry, levying upon the property standing in the name of "Marita M. Keller-Teschke," and located at the address of the premises. On May 2, 1987, a mortgage document was recorded at the registry reflecting that a mortgage upon the premises had been granted, that day, by "Marita M. Keller f/k/a/ Marita Keller-Teschke" to University in the amount of $57,600.

In July, 1987, a deputy sheriff, relying on the writs of attachment and execution, sold the premises at a "public auction" conducted in the deputy sheriff's office in Cambridge to Gerd for $41,993.20 including costs of sale.[7] Notice of the sale had been delivered to Marita, posted in public places in Newton, Watertown and Waltham and published in the Newton Graphic pursuant to G. L. c. 236, § 28.[8] The notice

---

[6]The execution was based upon a judgment issued in favor of Gerd in December, 1986, in the amount of $34,656 plus interest, costs, and attorney's fees.

[7]Provisions authorizing an "officer" to make sale by public auction and conveyance by deed are contained in G. L. c. 236, § 27. Deputy sheriffs are empowered by G. L. c. 37, § 11, to serve all precepts and process "required by law to be served by an officer." See also G. L. c. 220, § 7. In the circumstances of this case, a sheriff's deed transfers to the purchaser all of the debtor's rights in the deeded property as of the time of the recording of the attachment, provided that the attachment has been perfected. See *Porter* v. *Millet*, 9 Mass. 101, 103 (1812); *Cressey* v. *Cressey*, 215 Mass. 65, 66-67 (1913); Shapiro, Perlin & Connors, Massachusetts Collection Law §§ 9:56 & 9:57 (2d ed. 1992).

[8]In pertinent part, G. L. c. 236, § 28, provides that "[t]he officer, thirty days at least before the sale, shall deliver to the debtor . . . written notice of the time and place of sale and shall post such a notice in a public place in the town where the land lies and also in two adjoining towns, if there are so many in the county. The officer shall also publish such a notice once in each of three successive weeks, the first publication to be not less than

indicated that sale was to be held at the deputy sheriff's office. Neither Meritor nor University was given notice or had actual knowledge of the sale. An appraisal dated April 5, 1990, indicated that the premises had a market value of $250,000.

The judge found "the [Middlesex South] Registry indices list the name 'Keller-Teschke' separately from the name 'Keller' and the name 'Teschke'. Accordingly an examiner would not find the former name in running the other two. However, the execution and the . . . mortgage . . . from Marita M. Keller to University . . . also appear[s] in the records under the name of Keller-Teschke, the latter because of the dual description of the mortgagor."

With respect to the attachment, the controlling statute, G. L. c. 223, § 66, provides in pertinent part that:

> "[N]o attachment shall be valid against [purchasers in good faith and for value] as to any particular parcel of land . . . in any case where the name of the owner thereof under which he acquired title thereto as appears on the public records is not included in the writ [of attachment] unless the writ is seasonably amended to include such name and then only from the time when a correspondingly amended copy is deposited [in the registry of deeds for the county or district where the land lies]."

The judge construed this section strictly:

> "[T]he General Court intended that the writ must set forth the name of the owner of the land sought to be attached in the same manner as it appears in the deeds or probate documents by which the owner took title. In the present case the attachment should have been in the name of Marita Keller Teschke and Marita M. Keller. . . . The attachment, however, was not in either of

---

twenty-one days before the day of sale, in a newspaper published in the town where the land lies."

these names but was in the hyphenated version of the individual defendant's name, Keller-Teschke. This does not meet the statutory requirements as such an instrument would not be indexed under her correct name (if this is material) or her earlier unhyphenated name."

Accordingly, she determined that the attachment, execution and sheriff's sale did not have priority over Meritor's mortgage interest, which "clearly" was entitled to "the statutory protection."

Uncontested before us is the judge's further conclusion that University was not similarly protected because it lost its standing as a purchaser in good faith as a result of the use in the granting clause of the mortgage of the name "Keller-Teschke" as an alternative. She stated that University "must be taken to have constructive knowledge of the attachment."[9] The judge, however, determined that University's mortgage interest was not affected by the sheriff's sale because the statute under which it was conducted, G. L. c. 236, § 28, "does not . . . require notice of the sale to [mortgagees]" and that "[t]he procedure therefore is constitutionally infirm," citing *Mennonite Bd. of Missions* v. *Adams*, 462 U.S. 791 (1983), and *Christian* v. *Mooney*, 400 Mass. 753 (1987), appeal dismissed and cert. denied sub nom. *Christian* v. *Bewkes*, 484 U.S. 1053 (1988).

1. *The attachment.* There appear to be only two cases interpreting G. L. c. 223, § 66, and involving the mistaken naming of a defendant in a writ of attachment. See *Norris* v. *Anderson*, 181 Mass. 308 (1902); *Solomon* v. *Nessen*, 263 Mass. 371 (1928). Both cases, however, apply earlier and significantly different versions of the statute and, therefore,

---

[9]By a somewhat parallel analysis, constructive notice might also be attributed to Meritor, since an examiner running Marita's title and relying on the title reference in the mortgage to Meritor might well have reviewed the 1982 deed to Marita and learned that as grantor (with Gerd) to herself she was described as "Keller-Teschke." See *Colonial Bank & Trust Co.* v. *Sheehan*, 357 Mass. 239, 241-243 (1970); 5 Tiffany, Law of Real Property § 1293 (3d ed. 1939 & Supp. 1995). The matter is rendered moot, however, by our determination of the issues presented by the sheriff's sale.

are not instructive.[10] Therefore, we look directly to the words of the statute which plainly condition the validity of an attachment as against subsequent good faith purchasers on the name in the writ of attachment matching the name under which the owner of the property sought to be attached acquired record title. To the extent that the statutory terms are intended to have technical meaning relating to land recording practices, see G. L. c. 4, § 6, Third, we give considerable deference to the interpretation of those terms by a judge of the Land Court. Accordingly, we agree with her conclusion that the attachment was not valid as against Meritor.

2. *The sheriff's sale.* In the course of the proceedings in the Land Court, Meritor and University alleged that the sheriff's sale violated the due process clause of the Fourteenth Amendment to the United States Constitution because notice of the sale had not been given to them. Apparently in anticipation of the entry of a judgment containing a declaration addressing that allegation, the Attorney General was given an opportunity to address the issue of constitutionality,[11] and according to the judge took "the position that the recording statutes in and of themselves are sufficient notice and that no further notice to a mortgagee is necessary to apprise it of a proposed sale as is now done in the instance of a

---

[10]Both of the cited cases engendered considerable interest among conveyancers, see 13 Mass. L.Q., No. 3 at 99 (February, 1928), and No. 5 at 66 (May, 1928), and apparently resulted in the present version with its emphasis on the record name of the owner. See also Crocker's Notes on Common Forms § A8, at 852-853 (8th ed. 1995).

[11]The record does not give us the benefit of the pleadings, and we are therefore unaware whether a formal request for a declaration was made pursuant to G. L. c. 231A. In the context of such a request, the Land Court is empowered to issue a declaration, see G. L. c. 231A, §§ 1 & 2, provided that the Attorney General is notified and given an opportunity to be heard with respect to the constitutional aspects of the action. G. L. c. 231A, § 8. See *Wright* v. *Lawrence*, 21 Mass. App. Ct. 343, 345 (1985).

mortgage foreclosure. See G. L. c. 244, § 14."[12] The Attorney General has not participated in this appeal.

The judge's decision squarely presents us with a constitutional dispute that has been litigated and decided in the trial court, fully briefed and argued and involves more than a theoretical exercise. We, therefore, address the issue presented. See *Shell Oil Co.* v. *Revere*, 383 Mass. 682, 685 (1981); *Boston* v. *James*, 26 Mass. App. Ct. 625, 628-630 (1988); *Lamontagne* v. *Knightly*, 30 Mass. App. Ct. 647, 651-654 (1991). Contrast *Cole* v. *Chief of Police of Fall River*, 312 Mass. 523, 526, appeal dismissed sub nom. *Cole* v. *Violette*, 319 U.S. 581 (1942).

In *Christian* v. *Mooney*, 400 Mass. at 761, the Supreme Judicial Court, citing *Mennonite*, 462 U.S. at 799-800, stated: "Failure to give notice to a mortgagee of record, by personal service or by mail, of a proceeding to sell the mortgaged property for nonpayment of taxes is a denial of due process of law." In *Mennonite*, the Supreme Court, in the context of a tax sale under Indiana law, stated that "[n]otice by mail or other means as certain to ensure actual notice is.a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable." *Mennonite, supra* at 800.

The circumstances in *Mennonite* are sufficiently similar to those here presented to make directly applicable the rationale and holding of that decision. We are satisfied that the State action necessary to implicate the due process protections of the Fourteenth Amendment has been established. The approval of the attachment by a Superior Court judge reflected

---

[12]General Laws c. 244, § 14, provides in pertinent part that:

"[N]o sale under [a] power [of sale] shall be effectual to foreclose a mortgage, unless, previous to such sale, . . . notice . . . has been sent by registered mail to all persons of record . . . holding an interest in the property junior to the mortgage being foreclosed . . . at the address of such person set forth in any document evidencing the interest. . . ."

in the record, see Mass.R.Civ.P. 4.1, 365 Mass. 737 (1974), and the use by the plaintiff of a deputy sheriff, a government official, to implement statutory attachment, levy and sale procedures constitute State action tantamount to that exercised in *Mennonite.* See *Lugar* v. *Edmondson Oil Co.*, 457 U.S. 922, 924-940 (1982); *Tulsa Professional Collection Servs., Inc.* v. *Pope*, 485 U.S. 478, 486 (1988) ("[W]hen private parties make use of state procedures with the overt, significant assistance of state officials, state action may be found"); Rotunda & Nowak, Treatise on Constitutional Law § 16.3, at 551-552 (2d ed. 1992 & Supp. 1995, at 101-102). Contrast *Penney* v. *First Natl. Bank of Boston*, 385 Mass. 715, 718-719 (1982); *Opinion of the Justices*, 408 Mass. 1215, 1217-1223 (1990).

University, as mortgagee, possessed a property interest at least as substantial as that thought worthy of due process protection in *Mennonite.* The mortgagee there possessed a transferable lien subject to nullification or diminution by the tax sale. *Mennonite, supra* at 798. Contrast *Debral Realty, Inc.* v. *DiChiara*, 383 Mass. 559, 563-567 (1981). In this State, a mortgagee acquires "title" from the mortgagor subject only to the latter's right of redemption and encumbrances and liens of record. See *Krikorian* v. *Grafton Co-op. Bank*, 312 Mass. 272, 274-275 (1942); *Cooperstein* v. *Bogas*, 317 Mass. 341, 343-344 (1944). The interest of a junior mortgagee, therefore, is susceptible of nullification by a sheriff's sale enforcing a senior recorded encumbrance or lien. In the case of a sheriff's sale, as much as in a tax sale, notice of the sale is essential to affording a junior mortgagee an opportunity to protect its interest by bidding or inviting interested bidders. University's full name and address were set out in the recorded mortgage, see G. L. c. 183, § 6C, and the ascertainability of that information is not in issue.

The statutory notice given by the sheriff was no more likely to alert junior mortgagees than was the Indiana law tested in *Mennonite* under which the county auditor was required to give notice by mailing to the owner of the property, posting notice in the county courthouse and publishing once

each week for three consecutive weeks. General Laws c. 236, § 28, requires the officer making the sale to give notice by delivery to the debtor, posting in a public place in the town where the land to be auctioned is located and also in two adjoining towns and publishing once in each of three successive weeks in a newspaper published in the town where the land is located. As *Mennonite* makes clear, neither the mortgagee's commercial sophistication nor its ability to protect itself by periodic checks of the registry records diminishes the obligation to provide actual notice when the name and address of the mortgagee are reasonably ascertainable. *Mennonite*, 462 U.S. at 799-800. Significantly, the Supreme Court noted that "a mortgagee's knowledge of delinquency in the payment of taxes is not equivalent to notice that a tax sale is pending." *Mennonite, supra* at 800. Similarly, knowledge of an attachment constructively provided by recording at a registry is not equivalent to notice that a scheduled sheriff's sale is pending since a sale may be conducted for up to six years after the recording of the execution and, in some circumstances, well beyond that time. See G. L. c. 236, § 49A, and c. 223, § 114A. See also G. L. c. 235, § 23; Mendler, Massachusetts Conveyancers' Handbook § 5:12.06 (3d ed. 1984 & Supp. 1994); Enos & Hovey, Real Estate Law § 21 (Massachusetts Conveyancers Association Title Standard No. 20) 1995. In terms of allocation of burden, it is far more reasonable to impose a duty on the party conducting the sale to notify easily ascertainable mortgagees at their recorded addresses than to require a mortgagee to check local newspapers and posting places at least every twenty-one and thirty days respectively.

We agree with the judge that, in the circumstances, the provisions of G. L. c. 236, § 28, are inadequate to provide University the notice to which it was entitled under the Fourteenth Amendment.

*Judgment affirmed.*