Town of Andover vs. State Financial Services, Inc.

No. 98-P-953.

Suffolk. November 10, 1999. - February 9, 2000.

Present: Jacobs, Greenberg, & Rapoza, JJ.

Further appellate review granted, 431 Mass. 1104 (2000).

*Taxation,* Real estate tax: foreclosure of right of redemption. *Due Process of Law,* Notice. *Land Court,* Vacation of judgment.

Where an owner of land, through no fault of its own, never received actual notice of the town's petition to foreclose all rights of redemption for nonpayment of taxes, due process considerations warranted the granting of the owner's petition to vacate the foreclosure decree, filed within one year of the owner's receiving actual notice of the judgment; the provisions of G. L. c. 60, § 69A, did not, in the circumstances, preclude the granting of the motion. [539-542]

Petition filed in the Land Court Department on June 9, 1994.

A motion for relief from judgment, filed on June 16, 1997, was heard by *Peter W. Kilborn,* J.

*Kevin L. Quinlan* for the defendant.
*Judith O. Trufant* for the plaintiff.

Greenberg, J. A decree foreclosing and barring all rights of redemption in certain land taken for nonpayment of taxes owed to the town of Andover (town) entered after the defendant's default on December 29, 1994. On June 16, 1997, almost two and one-half years later, the defendant, State Financial Services, Inc., filed a motion for relief from the final judgment, the equivalent of a petition to vacate the foreclosure decree. After conducting two days of hearings on the motion, a Land Court judge denied relief, and the defendant has appealed. The primary ground of appeal is the defendant's contention that its due process rights were violated because, through no fault of its own, it never actually received notice of the impending foreclosure. A secondary ground is that, in equity, G. L. c. 60,

§ 69A, should not preclude the granting of the motion under the particular facts of this case.[1]

The judge made careful findings of fact which are not in dispute. To give context, we summarize those findings as supplemented by uncontested documentary materials contained in the record. The defendant acquired the property, a small island on Foster's Pond in Andover, by virtue of a mortgage foreclosure deed recorded on October 10, 1990. At the time the defendant purchased the property, taxes for 1989 and 1990 were unpaid. The tax delinquency continued into 1991. The tax taking, which was dated and recorded on September 27, 1991, at the registry of deeds, recited that the defendant was the "[s]upposed subsequent owner" of the property. On September 30, 1994, a citation containing notice of the petition to foreclose all rights of redemption in the land issued in the defendant's name, as required by G. L. c. 60, § 66, and G. L. c. 4, § 7, cl. 44.[2]

The town attempted service by certified mail, return receipt requested, to the defendant's business address on the fifth floor of an office building at 280 Friend Street, Boston. At the time, the Friend Street building was being rehabilitated, and it was essentially vacant except for the defendant's small office space on the fifth floor. There apparently were no mailboxes on the ground floor, and the elevator to the fifth floor was often tied up for long periods of time by subcontractors and workmen hauling building materials up and down. Rather than walk up four

---

[1]The pertinent portion of § 69A, as inserted by St. 1945, c. 226, § 2, provides as follows: "No petition to vacate a decree of foreclosure entered under section sixty-nine and no proceeding at law or in equity for reversing or modifying such a decree shall be commenced by any person other than the petitioner except within one year after the final entry of the decree if the decree is entered on or after September first, nineteen hundred and forty-five or within one year after said date if the decree was entered prior to said date."

[2]Section 66, as appearing in St. 1935, c. 224, § 1, provides: "Upon the filing of such a petition the court shall forthwith cause to be made by one of its official examiners an examination of the title sufficient only to determine the persons who may be interested in the same, and shall upon the filing of the examiner's report notify all persons appearing to be interested, whether as equity owners, mortgagees, lienors, attaching creditors or otherwise, of the pendency of the petition, the notice to be sent to each by registered mail and return of receipt required, the addresses of respondents, so far as may be ascertained, being furnished by the petitioner. Such other and further notice by publication or otherwise shall be given as the court may at any time order. . . ." General Laws c. 4, § 7, cl. 44, as inserted by St. 1955, c. 683, provides: " 'Registered mail', when used with reference to the sending of notice . . . shall include certified mail."

flights, mail deliverers sometimes would give mail to people doing work in the building and would ask that they deliver it. On October 4, 1994, a subcontractor, who was not an agent or officer of the defendant but was working in the building, signed for the notice at issue, then "forgot about it or otherwise lost or misplaced" it. The Land Court judge found that the defendant never received it. For its part, the town was satisfied that the mailing had been accomplished because the return receipt bore someone's signature. When the defendant failed to file an answer in the subsequent tax title foreclosure proceeding, a judgment of the Land Court dated December 29, 1994, granted absolute title to the town. See G. L. c. 60, § 37. After acquiring tax title on December 29, 1994, the town mistakenly sent tax bills for 1995 and 1996 to the defendant. Unaware of the decree of foreclosure, the defendant paid 1995 and 1996 taxes on a parcel to the town that claims to own it.[3]

In 1996, the defendant put the property up for sale. In July of that year, a neighbor informed the defendant of a rumor that the town had taken the property and that it was no longer the defendant's to sell. Perplexed, the defendant's attorney wrote to the collector of taxes seeking clarification and an opportunity to redeem. The town admits it received these letters, but did not reply. Finally, in June of 1997, the defendant filed the motion for relief from judgment which is at issue.

General Laws c. 60, § 69A, establishes a one-year limit during which a decree may be challenged and was "designed to limit the right as well as the remedy." *Sharon* v. *Kafka*, 18 Mass. App. Ct. 541, 542-543 (1984), quoting from *Whitehouse* v. *Sherborn*, 11 Mass. App. Ct. 668, 673 (1981). The judgment in this case entered on December 29, 1994, and the petition for relief from judgment was filed June 16, 1997, almost two and one-half years later. The judge's findings demonstrate that he fully understood the difficulties of the situation presented to him. He accepted that no notice actually reached the defendant, but he ruled that the defendant had pointed to no particular way in which the foreclosure sale in this case deviated from the requirements of G. L. c. 60 and G. L. c. 4, § 7, cl. 44. Mindful that the Legislature required a signed return receipt card, but not actual receipt, and given the constitutionality of notice

---

[3]The defendant was billed quarterly for taxes from January, 1995, to April, 1996, and paid the bills. The town agreed to remit these payments to the defendant and has been ordered by the Land Court judge to do so.

"reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action," *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950), the judge denied relief relying on a strict and unbending application of the statute.

We said in *Sharon* v. *Kafka*, 18 Mass. App. Ct. at 544, however, that "[i]f there was a denial of due process, the stricture of § 69A would not apply." See, e.g., *Christian* v. *Mooney*, 400 Mass. 753, 761 (1987), appeal dismissed and cert. denied sub nom. *Christian* v. *Bewkes*, 484 U.S. 1053 (1988); *Boston* v. *James*, 26 Mass. App. Ct. 625, 630 (1988); *North Reading* v. *Welch*, 46 Mass. App. Ct. 818, 819-820 (1999). That is, there could be extraordinary circumstances that require flexibility in the application of § 69A.

The town maintains that it followed the requirements of § 66 and that no more is needed to satisfy due process. While it is true that the town had no way of knowing of the failed delivery, the defendant was equally in the dark about what happened. Equitable considerations favoring the defendant include: the defendant was a tenant at 280 Friend Street with no ability to control the difficulties mail deliverers experienced in accessing its mailbox; the town continued to send tax bills to the defendant for the years 1995 and 1996 and those bills were promptly paid by the defendant; the defendant sought relief from judgment within one year after it received actual notice of the judgment against it; and "[t]he only legitimate interest of a town in seeking to foreclose rights of redemption is the collection of the taxes due on the property, together with other costs and interest," *Boston* v. *James*, 26 Mass. App. Ct. at 630, quoting from *Lynnfield* v. *Owners Unknown*, 397 Mass. 470, 474 (1986). Cf. *West* v. *Selectmen of Yarmouth*, 345 Mass. 547, 551 (1963) (holding that, in equity, plaintiff must be given the opportunity to redeem). These considerations are joined by constitutional concerns. "[A] statute or a rule may be held constitutionally invalid as applied when it operates to deprive an individual of a protected right although its general validity as a measure enacted in the legitimate exercise of state power is beyond question." *Boddie* v. *Connecticut*, 401 U.S. 371, 379 (1971).

Due process requires the opportunity to be heard, and this opportunity "has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." *Mullane* v. *Central*

*Hanover Bank & Trust Co.*, 339 U.S. at 314. It is well established that where it is impossible to ensure interested parties receive actual notice — as when the identities or addresses of those parties are unknown — "even a probably futile means of notification [such as notice by publication] is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights." *Id.* at 317.

Where identities and addresses are known, however, it is a different story: "If appellant's identity was known or 'reasonably ascertainable,' then termination of appellant's claim without actual notice violated due process." *Tulsa Professional Collection Servs.* v. *Pope*, 485 U.S. 478, 491 (1988), quoting from *Mennonite Bd. of Missions* v. *Adams*, 462 U.S. 791, 800 (1983). See *Teschke* v. *Keller*, 38 Mass. App. Ct. 627, 635· (1995) (obligation to provide actual notice when name and address reasonably ascertainable). Contrast *Labor Relations Commn.* v. *Blue Hill Spring Water Co.*, 11 Mass. App. Ct. 50, 60 (1980) (presumption of constitutionality not rebutted in absence of proof that actual notice was not received by officer or agent). The defendant's identity and address were known; hence, termination without actual notice violated due process.

The town argues that the defendant is a sophisticated entity aware both of the fact that taxes were owed and of the consequences of failing to pay them. It is certainly true that taxes are assessed on real estate, and if they are not paid, the municipality will take the appropriate action to collect these taxes. *Guaranty Mort. Corp.* v. *Burlington*, 385 Mass. 411, 419 (1982). The defendant's situation, however, differs significantly from the claim made in the *Guaranty* case, which related to notice by publication of a proposed tax sale of low value land pursuant to G. L. c. 60, § 79. Among other differences, title in that case had been transferred to a good faith purchaser. In the present case, title remains with the town.[4] Regardless, "knowledge of delinquency in the payment of taxes is not equivalent to notice that a tax sale is pending." *Teschke* v. *Keller*, 38 Mass. App. Ct. at 635, quoting from *Mennonite Bd. of Missions* v. *Adams, supra* at 800. The town was obliged to

---

[4]Had the town, subsequent to the taking but prior to the defendant's objection, sold the land to a bona fide purchaser without notice of the defendant's claim, our analysis might be very different. Where the land remains in the town's possession, however, the interests of innocent third parties need not enter. See *West* v. *Selectmen of Yarmouth*, 345 Mass. 547, 550-551 (1963).

give actual notice of the foreclosure action; assertions that the defendant knew taxes were owed will not suffice. In this case, the town itself manifested confusion about the state of title by continuing to send tax bills to the defendant and continuing to retain the taxes paid.

Although effective in the overwhelming number of cases, delivery of notice to the proper address will fail to provide actual notice on rare occasion, through no party's fault. As the case at bar illustrates, mail sometimes is lost after delivery to the proper address but before possession or control passes to the intended individual or his agent. See, e.g., *Commonwealth* v. *Crosscup*, 369 Mass. 228, 239 (1975)[5]; *Greene* v. *Lindsey*, 456 U.S. 444, 453 (1982). Because G. L. c. 60, § 66, requires that notice be delivered with a return receipt, the number of cases posing genuine questions on this issue should remain small.

The town disagrees, arguing that recognition of a due process claim here will open the floodgates, subjecting every foreclosure ever effected to eternal uncertainty. One imagines a parade of horribles, with parties creating due process claims for themselves by refusing to bring in their mail, or enlisting accomplices to intercept any pieces of mail that sport an unwelcome return address. Such subterfuge could undoubtedly be thwarted by a showing that possession or control had passed. See *Commonwealth* v. *Crosscup*, *supra*. While "mindful . . . of the danger of unsettling titles by allowing indiscriminate attacks on final decrees of foreclosure," *Boston* v. *James*, 26 Mass. App. Ct. at 629, the truth of the matter is that there is some uncertainty in the system we already enjoy. It should surprise no one to learn that a *substantiated* due process claim trumps § 69A. See, e.g., *id.* at 630 ("[I]t is settled that the time limit does not apply where the application [under G. L. c. 60, § 69A,] is an extraordinary one grounded on a claim of breach of due process and the claim is substantiated"). This necessarily means that as long as our Constitution requires due process, parties may challenge claims long thought settled, at least where title remains with the taxing authority.

The order denying the motion for relief from final judgment

---

[5]While proper mailing of a letter is prima facie evidence of receipt by its addressee, that presumption disappears upon proof of nonreceipt. See *id.* at 239-240.

is reversed. An order allowing the motion shall be entered together with an appropriate amended final judgment.

*So ordered.*