TOWN OF ANDOVER *VS.* STATE FINANCIAL SERVICES, INC.

Suffolk. September 7, 2000. - October 17, 2000.

Present: MARSHALL, C.J., ABRAMS, GREANEY, IRELAND, SPINA, COWIN, & SOSMAN, JJ.

*Due Process of Law,* Notice. *Mail. Taxation,* Real estate tax: foreclosure of right of redemption. *Land Court,* Vacation of judgment.

Where a municipality sent notice of a petition to foreclose rights of redemption in land by certified mail to the owner's business address, such notice was "reasonably calculated" to provide the owner with actual notice and satisfied the requirements of G. L. c. 60, § 66, and the due process clause of the Fourteenth Amendment to the United States Constitution. [574-576]

General Laws c. 60, § 69A, imposes an absolute bar on petitions to vacate a decree of foreclosure for nonpayment of taxes after one year from the final entry of the decree. [576-577]

PETITION filed in the Land Court Department on June 9, 1994.

A motion for relief from judgment, filed on June 16, 1997, was heard by *Peter W. Kilborn,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Thomas J. Urbelis (Jacqueline L. Allen* with him) for the plaintiff.

*Kevin L. Quinlan* for the defendant.

COWIN, J. This appeal presents the issue whether the due process clause of the Fourteenth Amendment to the United States Constitution requires landowners to receive actual notice of foreclosure proceedings barring rights of redemption. We hold that it does not.

1. *Background.* We summarize the facts found by a Land Court judge supplemented by uncontested documentary materials in the record. On October 10, 1990, State Financial Services, Inc. (State Financial), acquired the property at issue, an island in Fosters Pond located in the town of Andover (town), by a mortgage foreclosure deed. The foreclosure deed identified State Financial's address as 280 Friend Street, Boston. At the

time State Financial acquired the property, taxes on the property for 1989 and 1990 were unpaid. Although it is not clear when the town initially assessed taxes against State Financial, it is undisputed that no taxes were paid for the property from 1989 until January 19, 1995. In September, 1991, a tax taking was recorded with the registry of deeds, which listed State Financial as the "[s]upposed subsequent owner" of the property. On April 15, 1994, the town sent State Financial a letter "by regular mail," explaining that it intended to foreclose the right of redemption and that State Financial had until May 6, 1994, to respond. The United States Postal Service did not return the letter to the town as "undeliverable." In June, 1994, the town filed a petition in the Land Court against State Financial to foreclose the right of redemption under the provisions of G. L. c. 60, § 65. On October 3, 1994, a citation with notice of the petition to foreclose all rights of redemption in the land was sent by certified mail to State Financial at 280 Friend Street, Boston, as required by G. L. c. 60, § 66,[1] and G. L. c. 4, § 7, Forty-fourth.[2]

From the time State Financial acquired the land until February, 1995, State Financial had an office on the fifth floor at 280 Friend Street, Boston. At the time the citation with notice of the petition to foreclose was mailed, the building was under renovation and vacant, except for State Financial's office. During renovation, the building's elevators were often blocked. Because of the renovations and an absence of mailboxes or any place to leave mail, the postal service sometimes delivered State Financial's mail to the contractors working on the building and requested that a worker deliver the mail. State Financial was aware of this mail delivery problem.

On October 4, 1994, the postal service delivered the certified letter containing the citation to a contractor working on the renovation project. The contractor, who was not an agent, officer, or employee of State Financial, signed the return receipt for the certified letter and then "forgot about it or otherwise lost

---

[1]General Laws c. 60, § 66, reads, in pertinent part: "Upon the filing of a petition [to foreclose redemption rights] the court shall . . . notify all persons appearing to be interested, whether as equity owners, mortgagees, lienors, attaching creditors or otherwise, of the pendency of the petition, the notice to be sent to each by registered mail and return of receipt required, the addresses of respondents, so far as may be ascertained, being furnished by the petitioner."

[2]General Laws c. 4, § 7, Forty-fourth, reads, in pertinent part: " 'Registered mail', when used with reference to the sending of notice . . . shall include certified mail."

or misplaced" the letter. The green certified mail receipt card was returned to the town, bearing the initials of the contractor. No answer or appearance was filed in the Land Court; default entered, and, on December 29, 1994, the Land Court judge entered a decree barring all rights of redemption. See G. L. c. 60, §§ 67, 69.

Despite this foreclosure by the town in December, 1994, State Financial remained the assessed owner of the property until the tax bill for August 1, 1996, and the town continued to send State Financial tax assessments for 1995 and 1996. The only tax payments State Financial made on the property were from January 19, 1995 until April, 1996.

Sometime in 1996, State Financial learned through "a rumor" that the town had taken the land for unpaid taxes. In July, 1996, State Financial's attorney sent letters to the town's tax collector and the board of selectmen, requesting clarification of any tax delinquency and an opportunity to redeem the property and pay the taxes owed. The town received, but did not respond to, these two letters. Approximately eleven months later, on June 16, 1997, State Financial filed a motion for relief from the Land Court judgment.

After a hearing, the Land Court denied State Financial's motion, holding (1) that the town's mailing of the certified letter complied with due process because it was reasonably calculated, in the circumstances, to notify State Financial of the foreclosure proceedings; and (2) that State Financial's motion for relief from judgment, having been filed more than one year from the date of the decree, was barred by G. L. c. 60, § 69A.[3] The Land Court judge concluded that "[g]iven the volume of tax delinquencies, the limited resources of municipalities in terms of investigating non-receipted communications or the authority of receipts by agents, and the assumption that owners know they must pay their taxes and that enforcement will ensue if they do not . . . the notice given in this case [was] constitutionally sound."[4] Following an appeal by State Financial, the Ap-

[3]General Laws c. 60, § 69A, reads, in pertinent part: "No petition to vacate a decree of foreclosure entered under section sixty-nine and no proceeding at law or in equity for reversing or modifying such a decree shall be commenced by any person other than the petitioner except within one year after the final entry of the decree . . . ."

[4]At the Land Court hearing, the town offered to repay the taxes paid by

peals Court reversed the Land Court decision, ruling that due process entitled State Financial to "actual notice" because its identity and address were known at the time notice issued for the foreclosure proceedings. *Andover* v. *State Fin. Servs., Inc.,* 48 Mass. App. Ct. 536, 540 (2000). We granted the town's application for further appellate review.

2. *Due process.* "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane* v. *Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950). Applying this constitutional standard to a government sale of private land for failure to pay taxes, the Court explained that "[n]otice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable." *Mennonite Bd. of Missions* v. *Adams,* 462 U.S. 791, 800 (1983). See *Tulsa Professional Collection Servs., Inc.* v. *Pope,* 485 U.S. 478, 491 (1988) (using same standard); *Commonwealth* v. *Olivo,* 369 Mass. 62, 68-69 (1975) (noting due process standard); *Lamontagne* v. *Knightly,* 30 Mass. App. Ct. 647, 653-654 (1991) (same). The Supreme Court has deemed first class mail as a means "reasonably calculated" to provide the quality of notice the due process clause requires in other instances in which the government seeks to take a property interest. See, e.g., *Schroeder* v. *City of N.Y.,* 371 U.S. 208, 212-214 (1962) (requiring means of notice as likely as "the mails" to give notice of condemnation proceedings); *Walker* v. *Hutchinson,* 352 U.S. 112, 116 (1956) ("letter would have apprised" the property owner of condemnation proceedings); *New York* v. *New York, N.H. & H.R.R.,* 344 U.S. 293, 296-297 (1953) (suggesting mailed notice would have satisfied due process in discharging creditor's claim in bankruptcy proceeding). While recognizing first class mail as "reasonably calculated" to provide actual notice comporting with due process, the Court has implicitly accepted the fallibility of mail delivery and the possibility that some interested parties may not in fact receive

---

State Financial after December 29, 1994, and the Land Court judge ordered the town to do so with reasonable promptness.

notice delivered by this method. See *Tulsa Professional Collection Servs., Inc.* v. *Pope, supra* at 489-490 (noting provision of actual notice "need not be inefficient or burdensome" and recognizing "mail service is an inexpensive and efficient mechanism that is reasonably calculated to provide actual notice"); *Mennonite Bd. of Missions* v. *Adams, supra* at 800 (mailing of letter would have satisfied due process notice requirement in foreclosure sale for nonpayment of taxes); *Weigner* v. *City of N.Y.*, 852 F.2d 646, 651 (2d Cir. 1988), cert. denied, 488 U.S. 1005 (1989) (identifying Supreme Court's explicit awareness of risk). Cf. *Mullane* v. *Central Hanover Bank & Trust Co., supra* at 319 (approving of "notice reasonably certain to reach" interested parties and accepting "reasonable risks" notice may not reach every party).

The notice provision of our tax title foreclosure law, G. L. c. 60, § 66, requires that notice of the petition to foreclose be sent to interested parties by certified mail. G. L. c. 60, § 66. G. L. c. 4, § 7, Forty-fourth. By requiring certified mail, as opposed to first class mail, our notice statute not only satisfies due process, but provides greater assurance to our property owners that notice will actually be received. Compare G. L. c. 60, § 66, and G. L. c. 4, § 7, Forty-fourth, with *Mennonite* v. *Adams, supra* at 800. See *Weigner* v. *City of N.Y., supra* at 650-651 (recognizing certified mail's superiority to regular first class mail for providing notice). Sending notice by certified mail with a return receipt increases the likelihood the letter will reach its intended recipient. See *id.* at 650 (explaining advantages of certified mail). In this case, the town sent the Land Court notice by certified mail, return receipt requested, to State Financial's proper address at 280 Friend Street, Boston. When the postal service provided the town with the return receipt bearing the initials of someone who had signed for delivery, the town (and the Land Court) had no reason to doubt State Financial's receipt of notice. We conclude that sending notice in this fashion was "reasonably calculated" to provide State Financial actual notice of the foreclosure proceedings. That is all due process requires. Accordingly, we hold that the town's mailing satisfied the notice requirement of G. L. c. 60, § 66, and the due process clause.[5]

We note here that State Financial's failure to receive notice

---

[5]State Financial also argues that the town's notice failed to follow Mass. R. Civ. P. 4 (d) (2), as amended, 370 Mass. 918 (1976), and Mass. R. Civ. P. 4 (f), 365 Mass. 733 (1974), which concern service of process. The provisions

was due at least in part to its own inaction. State Financial was aware that its mail was being delivered to independent contractors working at 280 Friend Street. Yet State Financial apparently took no steps to achieve certainty of mail delivery, such as obtaining a post office box or other secure location for mail delivery. Real property owners know, or at least are on constructive notice, that real estate taxes must be paid. Sophisticated property owners such as State Financial are aware that failure to pay property taxes will result in tax takings and foreclosure proceedings and that notice of these consequences arrives by mail.

The Legislature has prescribed a method of notification that was reasonably likely to inform State Financial of the pendency of the foreclosure proceedings. The giving of notice was frustrated not by a defect in the legislative determination that notice by certified mail would be adequate, but rather by the notice recipient's own passivity with respect to existing conditions likely to obstruct mail delivery. Other equitable considerations, if any, are not relevant. If the notice statute is constitutionally acceptable as applied to these facts, as we hold it to be, courts may not subject the legislative judgment to a judicial review of its equity.

3. *Foreclosing rights of redemption.* Having concluded that the town's compliance with G. L. c. 60, § 66, satisfies due process, we now turn to State Financial's argument that public policy favors allowing tax redemption more than two years after entry of a decree foreclosing rights of redemption. General Laws c. 60, § 69A, itself, defeats this contention: "No petition to vacate a decree of foreclosure entered [barring redemption] and no proceeding at law or in equity for reversing or modifying such a decree shall be commenced by any person other than the petitioner except within one year after final entry of the decree . . . ." By enacting St. 1945, c. 226, entitled "An Act relative to the conclusiveness of decrees foreclosing tax titles," the Legislature clearly intended to "limit the time during which a decree could be challenged" to one year. *Sharon* v. *Kafka*, 18 Mass. App. Ct. 541, 542 (1984). See *Silverman* v. *Wedge*, 339 Mass. 244, 245 (1959) (noting title of act may be considered in construing statute's purpose); *Trustees of Boston*

of rule 4 (d) (2) and 4 (f) are not applicable to a tax foreclosure petition; rather, G. L. c. 60, § 66, sets forth the applicable standard for notification in proceedings for foreclosure of redemption rights.

*Univ.* v. *Assessors of Brookline*, 11 Mass. App. Ct. 325, 329 n.6 (1981) (same). Following this one-year period, the statute imposes an absolute bar on petitions to vacate. This bar protects the public's "need for an efficient and final determination of any dispute regarding a public taking, so that title to the land taken can be settled." *Sharon* v. *Kafka, supra* at 543, quoting *Whitehouse* v. *Sherborn*, 11 Mass. App. Ct. 668, 671 (1981). Any public policy issues have been resolved by this enactment. The Legislature has determined that "the public interest in marketable titles for tax takings 'outweighs considerations of individual hardship' after one year." *Sharon* v. *Kafka, supra*, quoting *Hardisty* v. *Kay*, 268 Md. 202, 208 (1973).

*Judgment affirmed.*