BARBARA EVANS *vs.* ROSENGARD MOVING SYSTEMS, INC.

No. 99-P-832.

Essex. October 17, 2001. - March 15, 2002.

Present: JACOBS, DREBEN, & GELINAS, JJ.

*Summary Process. Practice, Civil,* Summary process. *Notice. Negligence,* Contributory, Comparative. *Warehouseman's Lien. Conversion.*

In a civil action presented to the jury under the theory that the defendant, who was storing the plaintiff's property after she had been evicted from her apartment, had a duty to inform the plaintiff of the auction sale of the plaintiff's property, there was sufficient evidence to warrant the judge's denial of her motion for a directed verdict on the issue of contributory negligence, where the jury reasonably could have concluded that the plaintiff negligently failed to communicate an intent to reclaim her property or to respond when presented with an invoice from the defendant, and that her failure to arrange for receipt or forwarding of her mail from her former address was a cause of the defendant's notice of the auction not reaching her. [210-212]

The judge in a civil action correctly ruled that the failure of the defendant, who was storing the plaintiff's property after she had been evicted from her apartment, to give her notice of the auction sale of her property did not give rise to potential liability for conversion, where the lien on her property arose under the summary process statute, G. L. c. 239, § 4, rather than the warehouseman's lien statute, G. L. c. 106, § 7-210; therefore, the judge properly withheld the plaintiff's conversion count from the jury. [212-214]

CIVIL ACTION commenced in the Lawrence Division of the District Court Department on June 13, 1996.

After removal to the Superior Court Department, the case was tried before *Thayer Fremont-Smith,* J.

*Paul W. Pappas* for the plaintiff.

*John Delano Boyle* for the defendant.

JACOBS, J. More than two years after she was evicted by summary process from her residence in Andover and her furniture and furnishings were put in storage, the plaintiff discovered the stored property had been sold at auction by the defendant,

Rosengard Moving Systems, Inc. (Rosengard). She filed a complaint against Rosengard claiming conversion, violation of G. L. c. 93A, and negligent failure to notify her of the scheduled auction pursuant to G. L. c. 106, § 7-210, the warehouseman's lien statute.[1]

At trial, the judge in effect dismissed the conversion count by refusing to submit it to the jury. He also determined that the warehouseman's lien statute, with its detailed notice provisions relating to the sale of stored property, was inapplicable, and that the case was governed by G. L. c. 239, § 4, the summary process statute, which contains no notice requirement. The case was submitted to the jury, without objection,[2] on a negligence theory. Responding to special verdict questions, the jury determined that each of the parties was negligent and attributed seventy per cent of that negligence to the plaintiff and thirty per cent to Rosengard, thereby barring the plaintiff from recovery under the comparative negligence statute. See G. L. c. 231, § 85. Because the G. L. c. 93A count had been reserved to the judge (and apparently rejected by him after the special verdict), and because the conversion count had not been submitted to the jury, the action was dismissed.

In this appeal, the plaintiff argues that her count for conversion should have been submitted to the jury, that there was no evidence of her contributory negligence, and that her motion for a directed verdict on that issue therefore was erroneously was denied. We affirm the judgment dismissing the action.

*Facts.* On September 16, 1991, a constable, pursuant to an execution obtained by the plaintiff's landlord, engaged Rosengard to remove the plaintiff's personal property from her dwelling in Andover and store it in its warehouse in Haverhill. During the removal, the constable informed the plaintiff that the landlord would pay storage charges for three months and that she would be responsible for any charges thereafter. At that time, the plaintiff was given a telephone number after she asked

---

[1]The action originally was filed in the District Court, but removed to the Superior Court where it was tried.

[2]The judge stated he would submit the case to the jury with special questions on negligence, subject to posttrial motions. There is no indication in the record that any relevant motions or objections later were filed.

Peter Rosengard, the president of Rosengard, how he could be contacted. About three months later, the plaintiff wrote to Rosengard from an address in Lawrence,[3] and she subsequently received an invoice for storage charges of $900, with a request that she contact Rosengard.[4] Rosengard received no reply.[5] In April, 1992, Rosengard determined that it would auction the plaintiff's property and sent a certified letter containing a notice of the auction to the address of the apartment from which she had been evicted. The letter was returned as undeliverable.[6] In addition, Rosengard published a notice of the auction in a Haverhill newspaper.

The auction was held on May 16, 1992, and the sale of the plaintiff's property brought $2,988. After deduction of storage and auction charges, Rosengard prepared a check payable to the plaintiff in the amount of $194.58, but held it, not knowing where it should be sent. In June, 1994, when the plaintiff contacted Rosengard because she wanted to retrieve some items, she was informed of the auction. After the plaintiff supplied Rosengard with her current address, also in Lawrence, Rosengard forwarded the check to her. The jury found that the value of the property sold was $12,500.

*Discussion.* General Laws, c. 239, § 4,[7] provides that a landlord may, pursuant to an execution issued on a judgment in a summary process action, remove a tenant's personal property

[3]Following the eviction, the plaintiff moved to a rooming house in Lawrence. She testified she wrote to Rosengard in December, 1991, stating she could be reached at that address. The letter is not in evidence, nor did the plaintiff otherwise testify to its contents. There is no indication that Rosengard's records were changed to show the plaintiff's address in Lawrence as a result of that correspondence.

[4]The invoice includes a typed note: "Barbara Here Is an Updated Storage Bill Your Current Balance is $900.00 As Of The 16th Of February 1992, Your First 3 Months Were Paid By [the landlord]. Barbara We Can't Afford To Store Your Furniture & Household Goods For Ever With No Payments, Please Give Me A Call . . . Thank-You for Writ[]ing To Me . . . ."

[5]The plaintiff testified she attempted on several occasions to contact Peter Rosengard personally and by telephone but was unsuccessful. She further testified that she was "consumed" with family difficulties and saw no reason to acknowledge the invoice in writing.

[6]The plaintiff made no arrangements before or after her eviction in Andover for receiving or forwarding her mail.

[7]In pertinent part, G. L. c. 239, § 4, states:

from the rented premises and, if not then claimed by the tenant, have it stored for the tenant's benefit.[8] A lien on that property for reasonable removal and storage expenses is granted to whoever accepts the property for storage. Other than prohibiting the enforcement of the lien by sale of the property *during the first six months of storage*, the statute is silent as to how the sale may be conducted and does not specify that any notice to the owner is required.

Because the judge determined that G. L. c. 239, § 4, was applicable and that it did not make provision for notice, the case was presented to the jury based on the plaintiff's theory that Rosengard had a duty[9] to inform her of the auction sale of her

"If an officer, serving an execution issued on a judgment for the plaintiff for possession of land or tenements, removes personal property, belonging to a person other than the plaintiff, from the land or tenements and places it upon the sidewalk, street or way on which the land or tenements abut, he may forthwith . . . remove such property and cause it to be stored for the benefit of the owners thereof. Whoever accepts the same on storage from such officer shall have a lien thereon for reasonable storage fees and for reasonable expenses of removing it to the place of storage, but such lien shall not be enforced by sale of the property until it has been kept on storage for at least six months. If the owner of such property is present and claims it when it is so removed from the land or tenements, the officer shall not remove and store it . . . ."

[8] As a matter of modern practice, a tenant's property is stored rather than left outside the premises. Compare *Finnigan* v. *Hadley*, 286 Mass. 345, 348 (1934). Also, the landlord "will usually pay the mover and the warehouseman who typically requires payment of the first three months' storage charges." Alperin & Shubow, Summary of Basic Law § 15.92, at 457 (3d ed. 1996). See also Warshaw, Massachusetts Landlord-Tenant Law § 8:10, at 259 (1987).

[9] The plaintiff asserts that the trial court's decision effectively violates the due process clauses of the Massachusetts and Federal Constitutions. Not only was this constitutional issue not raised below, but it is not accompanied by any citation to authority or meaningful appellate argument. We decline to consider an important constitutional issue that is not fully briefed. *Phillips* v. *Youth Dev. Program, Inc.*, 390 Mass. 652, 660 (1983).

In any event, we need not consider whether the absence of a notice requirement in G. L. c. 239, § 4, presents a constitutional question because, to the extent that due process and State action may be in issue here, compare *Flagg Bros., Inc.* v. *Brooks*, 436 U.S. 149 (1978), due process reasonably was satisfied by the attempt to notify the plaintiff of the auction by publication and by certified letter sent to the address from which the plaintiff had been evicted. See generally *Andover* v. *State Financial Servs., Inc.*, 432 Mass. 571, 574-575 (2000), and authorities cited. The adequacy of Rosengard's approach to giving notice is underscored by its unanswered request that the plaintiff respond to

property. Accordingly, the special questions were designed to establish responsibility for the plaintiff's injury resulting from the sale of her property without her knowledge. There was no objection to this approach. "The theory of law on which by assent a case is tried cannot be disregarded when the case comes before an appellate court for review of the acts of the trial judge." *Santa Maria* v. *Trotto,* 297 Mass. 442, 447 (1937). The jury found Rosengard negligent in "fail[ing] to notify [the plaintiff] of the scheduled auction" and the plaintiff negligent "with regard to the auctioning of her possessions."

Contrary to the plaintiff's assertion, there was sufficient evidence to warrant the judge's denial of her motion for a directed verdict on the issue of contributory negligence. See *Poirier* v. *Plymouth,* 374 Mass. 206, 212 (1978). The jury reasonably could have concluded that the plaintiff negligently failed to communicate an intent to reclaim her property or to respond when presented with an invoice from Rosengard, and that her failure to arrange for receipt or forwarding of her mail from her former address in Andover was a cause of Rosengard's notice of the auction not reaching her. The plaintiff also asserts that even if she were found negligent, there was no evidence that her negligence was the proximate cause of the loss of her property. This claim ignores that proximate cause was encompassed by the jury questions. See *Zezuski* v. *Jenny Mfg. Co.,* 363 Mass. 324, 328-329 (1973).

Pointing to the silence of G. L. c. 239, § 4, as to notice, the plaintiff urges that we look to the warehouseman's lien statute, claiming that Rosengard's failure to give notice under G. L. c. 106, § 7-210, gave rise to potential liability for conversion and, accordingly, that the conversion count should have been submitted to the jury.[10] Section 7-210(2) sets forth detailed requirements for the enforcement of a warehouseman's lien,

the invoice, and the plaintiff's failure to arrange to have her mail forwarded from her former Andover residence. Moreover, to the extent that G. L. c. 106, § 7-210(2)(*b*), as amended by St. 1963, c. 188, § 13, provides guidance, its standard requiring that notice must be sent "to the last known address of any person to be notified" was satisfied by the attempt to notify the plaintiff by certified mail.

[10]In the plaintiff's complaint, the conversion count did not refer to G L. c. 106, § 7-210, but the statute was argued to the judge as being applicable to

and provides for liability for conversion for a wilful failure to comply.[11] The plaintiff's argument skirts the fact that the lien on her property arose under G. L. c. 239, § 4, and there is nothing in the warehouseman's statute to suggest that it, rather than § 4, controls the lien enforcement procedure in this case.

General Laws c. 106, § 7-103, as inserted by St. 1957, c. 765, § 1, states that the provisions of Article 7 of the Uniform Commercial Code are subject to any applicable "regulatory statute of the commonwealth." The lien created by G. L. c. 239, § 4, originated in the predecessor statute of 1899 and remains an integral part of the statutory control and regulation of the summary process scheme. We do not read the more recent and general warehouseman's lien statute as displacing the specific lien given by G. L. c. 239, § 4, in the context of a summary process action. Moreover, § 4 grants a lien to anyone who accepts the evicted tenant's goods for storage, while G. L. c. 106, § 7-209, contemplates a bailment with a warehouseman, defined in § 7-102(1)(h) as "a person engaged in the business of storing goods for hire." Nor are we directed to any particularized circumstances of the selection of Rosengard by the constable, or of Rosengard's acceptance of the property, that would indicate that the warehouseman's lien statute was intended to apply. Moreover, the plaintiff did not, at any time, take any action that might be construed as creating an independent contract with Rosengard. Although Rosengard sought to give the plaintiff

---

the conversion count. In any event, aside from the statutory argument, there is no claim that Rosengard wrongfully withheld the plaintiff's property. To maintain "an action of conversion[] against the warehouseman it was necessary for the plaintiff to prove a tender of the amount of the warehouse charges and that the warehouseman was given a reasonable time to ascertain the validity of the plaintiff's claim." *Treasurer & Recr. Gen.* v. *Tremont Storage Warehouse, Inc.*, 296 Mass. 531, 534 (1937). Compare *Finnigan* v. *Hadley*, 286 Mass. at 348 ("[T]he defendants had a lien upon the goods of the plaintiff for storage and were not subject to an action of replevin for failure to deliver them on demand without tender of reasonable storage charges").

[11]In addition to the provisions of G. L. c. 106, § 7-210, governing notice and sale, G. L. c. 106, § 7-210(9), as inserted by St. 1957, c. 765, § 1, provides: "The warehouseman is liable for damages caused by failure to comply with the requirements for sale under this section and in case of willful violation is liable for conversion."

notice generally in conformance with his usual practice,[12] that attempt does not implicate § 7-210. The judge correctly ruled that G. L. c. 239, § 4, and not G. L. c. 106, § 7-210, applied, and therefore properly withheld from the jury the plaintiff's conversion count.[13]

*Judgment affirmed.*

---

[12]Rosengard essentially followed procedures published by the Massachusetts Movers Association. These procedures appear to be intended to conform to the requirements of G. L. c. 106, § 7-210. It is not argued that any nonconformity by Rosengard with its own procedures caused injury to the plaintiff.

[13]The plaintiff complains that not applying the provisions of G. L. c. 106, § 7-210, creates a "two-tier system of citizens," because tenants whose property is stored under G. L. c. 239, § 4, are not entitled to notice of sale while those who store property under G. L. c. 106, § 7-210, have the benefit of notice provisions. Similar criticism has appeared before: "Thus, the warehouseman can sell the tenant's goods, to satisfy the outstanding debt, without affording the tenant a last chance to reclaim the stored goods." Note, Disposition of Evicted Tenants' Property, 25 Suffolk U. L. Rev. 1109, 1133 (1991). To date, attempts at remediation proposed to the Legislature have not succeeded. See *id.* at 1135-1136. With the exception of minor wording changes, G. L. c. 239, § 4, has not been significantly amended since the statute originated in 1899. Although the circumstances of this case do not compel us to read a specific notice requirement into G. L. c. 239, § 4, especially because Rosengard, in the circumstances, gave adequate notice, fundamental fairness considerations suggest that, in the future, provision for notice be imposed by either the Legislature or the courts. "A court will fill in necessary and appropriate procedural elements unless circumstances indicate a contrary legislative intent." *Frizado* v. *Frizado*, 420 Mass. 592, 597 (1995).