Fabricant, Judith, J.
INTRODUCTION
This action presents a dispute between the Attorney General of Massachusetts and certain banks and related entities regarding practices in connection with foreclosure of home mortgages. The Attorney General contends that certain alleged practices of the defendants are unfair and deceptive, in violation of G.L.c. 93A, §2. At an earlier stage of this litigation, the parties stipulated to the dismissal with prejudice of three of the six counts of the complaint, as well as of certain prayers for relief.[2] Now before the Court are the defendants’ motions to dismiss the remaining counts (I, V, and VI) for failure to state a claim on which relief may be granted, and a motion filed by all but one of the defendants to strike certain allegations.[3] For the reasons that will be explained, the motion to strike will be denied, and the motions to dismiss will be allowed in part and denied in part.
BACKGROUND
The Attorney General’s complaint provides the following factual allegations relevant to the three remaining claims.[4] Eight of the ten defendants are banks or related entities that are or were in the business of servicing loans secured by mortgages on residential real estate in Massachusetts (collectively, “the banks”). As such, the complaint alleges, the banks “act as agent for the current holders of mortgage loans” (¶124). Defendant MERSCORP, Inc., owns and operates the MERS System, which is a national registry that tracks ownership and servicing rights in residential mortgage loans. Defendant Mortgage Electronic Registration System, Inc., is its subsidiary; the complaint refers to these two defendants, collectively, as MERS.
The bank defendants, the complaint alleges (¶26), repeatedly “knowingly foreclosed on mortgages . . . even though they were neither the mortgagee, nor the holder of the mortgage, at the time they initiated foreclosure proceedings.” Further, the complaint alleges (¶¶27, 29), the bank defendants “falsely identified themselves as the present holder of certain mortgages throughout the foreclosure process, including in notices sent to the mortgagor, in court filings— including affidavits . . . and/or in published notices required” by statute. That conduct, the complaint asserts, resulted in void foreclosures, with adverse effects on “hundreds, if not thousands, of properties” in Massachusetts (¶30).
The complaint provides what it characterizes as “illustrative examples.” Three examples relate to defendant Chase Home Mortgage Finance LLC (“Chase”). In the first example, set forth at ¶¶31-35, on October 6, 2008, Chase filed a “complaint to foreclose”[5] a specified property in Hancock, alleging that it was “the assignee and holder” of a mortgage on the property. Chase received an order of notice in that action on February 6, 2009, in which it was named as the “holder of a Mortgage” on the property. Chase was not in fact the holder of the mortgage on those dates; it received an assignment on March 15, 2009. Chase sold the property at auction on December 16, 2009. A second example, involving a property in Brockton, appears at ¶¶36-40; again, Chase received an assignment of the mortgage after it had filed a complaint to *75 foreclose in which it alleged that it was the “assignee and holder” of the mortgage, and after it had obtained an order of notice naming it as the “holder” of the mortgage, but before it sold the properly at auction. In a third example, set forth at ¶¶41-47, involving a property in Boston, Chase received an assignment of the mortgage after it had filed a complaint to foreclose, obtained an order of notice, published notice of sale, and sold the property at auction; it then recorded a certificate of entry, identifying itself as “the current holder” of the mortgage, but referring to an entry made on the date of the auction, before it had received the assignment.
Examples involving Citibank, N.A., and CitiMortgage, Inc. (collectively, Citi) appear at ¶¶48-66. In one instance, involving property in Milford, Citi filed a complaint to foreclose on January 24, 2008, alleging that it was “the owner (or assignee) and holder” of the mortgage. It received an order of notice on the same date, identifying it as the “holder” of the mortgage. It sold the property at auction on March 25, 2008. It did not actually receive an assignment of the mortgage until after the sale, on May 21, 2008. On July 18, 2008, Citi recorded a certificate of entry, reflecting entry on April 23, 2008, before the assignment. In a second, similar example, with respect to a property in Boston, Citi filed a complaint to foreclose, obtained an order of notice, and sold the property at auction, all before receiving an assignment of the mortgage. After it received the assignment, it recorded a certificate of entry reflecting entry on the earlier date of the auction. A third example, regarding a property in Northbridge, is similar; Citi received the assignment after it had filed the complaint to foreclose, obtained the order of notice, and completed the auction sale; thereafter, it filed a certificate of entry reflecting entry on the date of the sale.
Examples regarding GMAC Mortgage, LLC (GMAC), set forth at T3167-92, are similar. In two instances, GMAC received the assignment after it had completed the sale at auction; in a third, it received the assignment after it had filed the complaint to foreclose, obtained an order of notice, and published notice of the sale, but before the auction; and in a fourth, it received the assignment after it had filed the complaint to foreclose but (as far as the complaint discloses) before other events relating to the foreclosure.
Examples involving Bank of America, relating to property in Revere and Oxford, appear at ¶¶93-97 and 98-102. In each instance the bank[6] filed a complaint to foreclose and obtained an order of notice before it received an assignment of the mortgage on the property, but it did not conduct the sale at auction until after it had received the assignment. Examples regarding Wells Fargo, relating to properties in Sturbridge and Lynn, appear at ¶¶103-114. In each instance the bank filed a complaint to foreclose and obtained an order of notice before receiving an assignment of the mortgage, but did not conduct the sale at auction until after it had received the assignment. The complaint does not allege the timing of the assignment in relation to the dates of the statutory notices of foreclosure in the instances involving Bank of America and Wells Fargo. As to the instance involving property in Sturbridge, however, the dates set forth would support an inference that the assignment to Wells Fargo occurred after publication of the notice of foreclosure.[7]
The complaint goes on to allege conduct of all defendants with respect to registration of instruments relating to mortgages on registered land. MERS, the complaint alleges, is owned by “some of the nation’s biggest banks and mortgage companies,” including several of the bank defendants and their subsidiaries.[8] MERS “has created a private electronic database (the ‘MERS’ system),” which is “designed to be a national electronic registry that tracks changes in beneficial ownership interests and servicing rights associated with mortgage loans.” In transactions utilizing the MERS system, MERS is named as the mortgagee either in the original mortgage, as nominee for the lender, or in a subsequent assignment. Through recording or registration of either the original mortgage or the assignment to MERS, the public record reflects its status as mortgagee.[9] The lender either retains the promissory note or sells it to investors, without making any public record of that transfer. Similarly, the lender may keep or transfer servicing rights, without making any public record. The MERS database tracks transfers of the note, and of servicing rights, but members of the general public do not have access to the database. MERS remains the mortgagee of record and “purportedly acts as an agent for each .new owner of the promissory note” (¶150).
The complaint alleges that defendants created and adopted the MERS system “principally to avoid registration and recording requirements,” and that “by cutting these corners,” defendants “have sought to avoid payment of millions of dollars of filing fees,” “without regard to the impact on the integrity of either the land title registration system or Massachusetts consumers.” Further, the complaint alleges, the MERS system “conceals from borrowers the true identity of the holder of the debt as memorialized in the promissory note,” which “impairs the borrower’s ability to deal directly with the holder of the note.”
The complaint again provides a series of “illustrative examples.” The first example, set forth at ¶¶161-172, is typical: borrowers gave a mortgage in favor of MERS, on registered land in Wareham, to secure a note to Shamrock Financial Corporation. The mortgage was registered. Nearly three years after the loan, MERS transferred the mortgage to defendant BAC Home Loans Servicing, L.R, which then filed an action in the Land Court to establish that the borrowers were not entitled to protection under the Servicemembers Civil Relief Act. Over the next twenty-three months, the Land Court issued an order of notice, and a subsequent judgment, both of which were registered. Mean *76 while, during this nearly five-year period, according to information in the MERS system, Shamrock transferred “the beneficial interest in the mortgage”[10] to Bank of America, which transferred it to Federal National Mortgage Association (known as FNMA or Fannie Mae). These transfers of the note were not registered.
The complaint goes on to allege that, in addition to the “routine failure to register the transfer of beneficial interests in mortgages,” “on information and belief, MERS and the Bank defendants also failed to register assignments of the actual mortgages. These failures similarly serve to undermine the integrity of registered land records and provided false or misleading information to the public concerning the identity of the actual holder of the mortgage” (¶230).
Based on these factual allegations, the remaining counts are three. Count I, labeled “Unfair or Deceptive Acts or Practices in Violation of G.L.c. 93A, §2: Foreclosing Without Being the Holder of the Mortgage,” alleges that each of the bank defendants violated G.L.c. 93A, §2, in that it “initiated foreclosure proceedings on properties ... for which it was not the actual holder of the mortgage” (¶234). Count V, labeled “Unfair or Deceptive Acts or Practices in Violation of G.L.c. 93A, §2: Failure to Register Assignment of Mortgages,” alleges that all defendants violated G.L.c. 93A, §2, in that “[u]pon information and belief’ they “assigned mortgages of registered land without registering such assignments” (¶249). Finally, count VI, labeled “Declaratory Judgment: Failure to Register Transfer of Beneficial Interests in Mortgages in Violation of G.L.c. 185, §67,” alleges that all defendants “transferred the beneficial interests in mortgages of registered land . . . without registering any of the instruments associated with those transfers” (¶253). Count VI seeks a declaration “that G.L.c. 185, §67 requires that the instruments transferring the beneficial interest in a mortgage secured by registered land must be registered” (¶254). As to all counts, the complaint seeks civil penalties, attorneys fees, and injunctive relief, including requiring defendants to cure defects in title resulting from the conduct alleged.[11]
DISCUSSION
I. The Motion to Strike
The Motion to Strike logically comes first, since its resolution will determine the contours of the complaint for purposes of the motions to dismiss. Defendants (not including Chase) urge the Court to strike paragraphs 27, 29, and 115-42 of the complaint, on the ground that these paragraphs relate only to the dismissed counts, and that their continued presence in the complaint harms the defendants’ reputations and their relationships with borrowers. The Attorney General responds that these allegations provide support for count I, as well as for the dismissed counts, and that their continued presence in the complaint does not prejudice defendants. Having thoroughly reviewed the complaint, and considered the arguments presented, the Court is of the view that, although most of the factual material included in these paragraphs appears relevant only to the dismissed claims, and although much of what appears in these paragraphs consists of conclusions of law rather than allegations of fact, certain facts set forth in paragraphs 27, 29, and 118-125 do bear on count I. Perhaps more important, the Court is not persuaded that striking portions of the complaint at this stage would protect defendants from any prejudice. The complaint has been a matter of public record for a year, and the settlement of the dismissed counts has similarly been a matter of public record since it occurred, and indeed has received considerable publicity.
That said, the Court observes that the Attorney General is bound by the agreement she made with the defendants, for which defendants have promised and provided substantial consideration. That agreement included dismissal with prejudice of three counts of the complaint and certain prayers for relief, along with preclusion of a specified form of remedy.[12] The Attorney General cannot avoid that commitment by attempting to construe the remaining counts as encompassing the conduct that formed the basis for the dismissed counts. The Court will therefore read count I as limited to the conduct expressly alleged in it, particularly that each of the bank defendants violated G.L.c. 93A, §2, by initiating foreclosure proceedings on properties for which it was not at the time it did so the actual holder of the mortgage. The Court will exclude from consideration with respect to count I any theory based on failure to identify the present holder of the mortgage in any notice of sale, or false representation of the foreclosing entity as the holder of the mortgage, or any conduct relating to modification of loans. Similarly, the Court will construe the prayers for injunctive relief, insofar as applicable to count I, as not including any request for relief that would have the effect of or would require the vacating of any foreclosure.
II. The Motion to Dismiss
To withstand a motion to dismiss, a plaintiffs complaint must contain “ ‘allegations plausibly suggesting (not merely consistent with)’ an entitlement to relief, in order to ‘reflect [a] threshold requirement. . . that the plain statement possess enough heft to sho[w] that the pleader is entitled to relief.’ ” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 554, 557 (2007). While a complaint need not set forth detailed factual allegations, a plaintiff is required to present more than labels and conclusions, and must raise a right to relief “above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact).” Id. To meet this standard with respect to each defendant, the complaint must identify the legal obligation in issue, and set forth facts to show that that defendant breached its obligation; general, conclusory assertions of illegality or defect do not suffice. See Iannacchino, 451 Mass, at 632-33 (allegation that defendant marketed “defec *77 tive” vehicles was conclusory and insufficient). See also Harvard Crimson, Inc. v. President & Fellows of Harvard Coll, 445 Mass. 745, 749 (2006).
A. Count I: “Initiating Foreclosure Proceedings Before Holding the Mortgage”
Defendants assert three grounds to dismiss count I: (1) G.L.c. 93A, §2, does not applyto their conduct because they did not act in trade or commerce; (2) the law does not require that a person who takes preliminary steps to foreclose, prior to issuance of a notice of sale, hold the mortgage; and (3) even if certain foreclosures were void because the foreclosing banks did not hold the mortgages at the time of the notice of sale or the sale, an invalid foreclosure does not in itself constitute a violation of G.L.c. 93A, §2, and the facts alleged do not show such a violation. The Court rejects the first of these theories. The Court agrees with the second, and for that reason will dismiss count I insofar as it is based on conduct prior to the stage of issuance of notice of sale. As to the third theory, the Court agrees that the Attorney General cannot proceed on a theory of per se violation, but nevertheless concludes that the facts alleged are sufficient, with respect to all but one of the defendants, to survive a motion to dismiss.
1. Trade or Commerce
General Laws c. 93A, §2, prohibits unfair or deceptive acts or practices “in the conduct of any trade or commerce.” Section 1 defines “trade” and “commerce” to include “the advertising, the offering for sale, rent or lease, the sale, rent, lease or distribution of any services and any property, tangible or intangible, real, personal or mixed, any security . . . and any contract of sale of a commodity for future delivery, and any other article, commodity, or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this commonwealth.” The statutory language on its face is broad enough to encompass virtually every kind of business, including the provision of goods or services of any kind. Linkage Corp. v. Trustees of Boston Univ., 425 Mass. 1,24 (1997) (noting the “broad sweep” of the statutory language). Case law confirms the breadth of the definition. See, e.g., LoweU. Gas. Co. v. Attorney General, 377 Mass. 37, 49 (1990) (public utilities); Raymer v. Bay State Nat. Bank, 384 Mass. 310,319 (1981) (banking); Doddv. Commercial Union Ins. Co., 373 Mass. 72, 78 (1977) (insurance); DePasquále v. Ogden Suffolk Downs, Inc., 29 Mass.App.Ct. 658, 662 (1990) (race track betting).
Despite the broad scope of the statute, Chase argues that its alleged actions fall outside the definition of trade or commerce, because its conduct merely constitutes the exercise of a contractual remedy. For this proposition it cites Begelfer v. Najarían, 381 Mass. 177, 191 (1980). The conduct in issue there involved an attempt to collect excessive interest on a loan. Id. at 179. The lenders who were alleged to have committed that' conduct were not in the business of lending or of collecting debts; they were a pharmacist and his wife, who had acted as passive investors. Id. at 180. The Court voided certain provisions of the note as prohibited by the usury statute, but rejected the borrowers’ attempt to hold the lenders liable for the collection effort pursuant to G.L.c. 93A. Id. at 191. The lenders, the Court reasoned, did not act in trade or commerce “merely by the exercise of contractual or legal remedies.” Id.
Begelfer did not, as Chase appears to suggest, establish a general rule that the exercise of contractual or legal remedies never constitutes conduct in trade or commerce. Rather, the Court applied its longstanding interpretation that c. 93A applies to “individuals acting in a business context,” not to “strictly private transactions.” Id. at 190 (internal quotations and citations omitted). The statute, as the cases have construed it, distinguishes between “a business person and an individual who participates in commercial transactions on a private, nonprofessional basis.” Id. The lenders in Begelfer fell into the latter category, notwithstanding their exercise of contractual and legal rights arising from a one-time commercial transaction.
The defendants here, according to the allegations of the complaint, are entirely unlike the lenders in Begelfer. These defendants are in the business of servicing mortgage loans, including foreclosing in case of default. They sell these services for profit, or provide them to their parent entities, which make loans for profit. The defendants’ conduct, as alleged in the complaint, occurred in the course of providing these services. The Court concludes that the allegations of the complaint are sufficient to establish that the defendants’ conduct occurred in trade or commerce.
2. Initiating Foreclosure Proceedings
General Laws c. 244, §14 et seq., governs a mortgagee’s exercise of a power of sale granted in a mortgage.[13] That section provides, in pertinent part:
The mortgagee or person having his estate in the land mortgaged, or a person authorized by the power of sale, ... or person acting in the name of such mortgagee or person, may, upon breach of condition and without action, do all the acts authorized by the power; but no sale under such power shall be effectuated to foreclose a mortgage, unless, previous to such sale, notice thereof has been published once in each of three successive weeks, the first publication to be not less than twenty-one days before the day of sale, . . . and notice thereof has been sent by registered "mail to the owner or owners of record of the equity of redemption . . . , said notice to be mailed at least fourteen days prior to the date of sale ... and unless a copy of said notice of sale has been sent by registered mail to all persons of record as of thirty days prior to the date of sale holding an interest in the property junior to the mortgage being foreclosed, said notice to be mailed at least fourteen days prior to the date of sale . . .
Section 14 goes on to provide a form of notice which “may be used and may be altered as circumstances require,” *78 but does not “prevent the use of other forms.” The statutory form recites that the sale will occur “[b]y virtue of and in execution of the Power of Sale contained in a certain mortgage ... of which mortgage the undersigned is the present holder.” The signature line again identifies the signor as the “Present holder of said mortgage.” Section 14 goes on to provide that “A notice of sale in the above form . . . shall be a sufficient notice of the sale; and the premises shall be deemed to have been sold, and the deed thereunder shall convey the premises ...”
Thus, under section 14, to accomplish a valid foreclosure by sale a mortgagee or person acting under the mortgagee’s authority must take three distinct steps: (1) publish three weekly notices, with the first at least twenty-one days before the sale; (2) send notice by registered mail to the owner at least fourteen days before the sale; and (3) send notice by registered mail to all junior lien-holders at least fourteen days before the sale. Each such notice must include specified information, and must be transmitted by the means specified, but the notices need not follow the precise forms provided in the statute. Section 15 of c. 244 imposes an additional requirement, to be met after the sale: the “person selling” must “cause a copy of the notice and his affidavit, fully and particularly stating his acts... to be recorded in the registry of deeds.” That section goes on, “if the affidavit shows that the requirements of the power of sale and of the statute have in all respects been complied with, the affidavit or a certified copy of the record thereof, shall be admitted as evidence that the power of sale was duly executed.”[14] As these provisions indicate, Massachusetts law authorizes a mortgagee to foreclose, by exercise of a power of sale provided in a mortgage, without the need of any litigation or court order, as long as the mortgagee complies with the statutory notice requirements, and files the required affidavit after the sale. See U.S. Notional Bank Ass’n v. Ibanez, 458 Mass, at 645-46 (“Massachusetts does not require a mortgage holder to obtain judicial authorization to foreclose on a mortgaged property”).
Section 35A of chapter 244, which became effective May 1, 2008, added a new requirement: Under §35A(b), a mortgagor of residential property has a “150-day right to cure a default... by full payment of all amounts that are due without acceleration of the maturity of the unpaid balance of the mortgage.” The right to cure period is shortened if the “creditor,” as that term is defined in §35A(a), “has engaged in a good faith effort to negotiate a commercially reasonable alternative to foreclosure.” If the creditor does so certify, “then the creditor may begin foreclosure proceedings after a right to cure period lasting 90 days.” Section 35A(a) defines “creditor” to include anyone who “holds or controls” a mortgage loan, “partially, wholly, indirectly, directly, or in a nominee capacity,” as well as “a mortgage servicer” and “any servant, employee or agent of a creditor.”
Section 35A(g) provides that “(t]he mortgagee, or anyone holding thereunder, shall not accelerate maturity of the unpaid balance ... or otherwise enforce the mortgage . .. until at least 150 days after the date a written notice is given by the mortgagee to the mortgagor; provided, however, that a creditor meeting the requirements of subsection (b) [with respect to a good faith effort to negotiate] that chooses to begin foreclosure proceedings” may do so “not less than 91 days after the date a written notice is given by the creditor to the mortgagor.” Section 35A(h) specifies the contents of the required notice, which must include the nature of the default, the right to cure, the date that right expires, the identity and contact information of a representative of the mortgagee, and the potential consequences of failure to cure. Section 35A(j) further provides that “[a] copy of the notice required by this section and an affidavit demonstrating compliance with this section shall be filed by the mortgagee, or anyone holding thereunder, in any action or proceeding to foreclose on such residential real property.”
Although none of these statutes by its terms requires a foreclosing mortgagee to initiate any judicial proceeding, Massachusetts mortgagees routinely do so, for the purpose of establishing that the foreclosure is not barred by the Servicemembers Civil Relief Act, 50 U.S.C. App. §503, et seq., formerly known as the Soldiers’ and Sailors’ Civil Relief Act of 1940. That federal statute protects current and recently active members of the United States military services from certain debt collection activities, including home mortgage foreclosures. The Act accomplishes that protection by providing that such a foreclosure “shall not be valid” if made during the period of statutory protection. 50 U.S.C. App. §533(c). The federal Act does not establish a mechanism for a lender or mortgagee to determine or establish whether the borrower is or recently was in military service. Massachusetts law has filled that gap by authorizing courts of equity to so determine, upon a petition filed for that purpose. St. 1943, c. 57, as amended by St. 1959, c. 105; St. 1982, c. 127; St. 1990, c. 496; and St. 1998, c. 142. See generally Beaton v. Land Court, 367 Mass. 385, 387 (1975).
The Massachusetts statute refers to a “proceeding in equity for authority to foreclose a mortgage . . . brought because of’ the Servicemembers Civil Relief Act. The statute provides a form of notice to be issued by the court in such a proceeding, directed to any named defendant and “to all persons entitled to the benefit of the Soldiers’ and Sailors’ Civil Relief Act of 1940 as amended.” The notice, which must be “substantially” in the statutory form, informs each such person that “(i]f you are entitled to the benefits of’ the federal Act, “and you object to such foreclosure . . . you or your attorney should file a written appearance and answer in said court” on a specified date, “or you may be forever barred from claiming that such foreclosure or seizure is invalid under said act.” The statute goes on to provide, at §1, as follows:
*79 [N]o person who is not a record owner of the equity of redemption in the mortgaged property and who is not entitled to the benefit of the Soldiers’ and Sailors’ Civil Relief Act. . . shall be entitled to appear or be heard in such proceeding, except on behalf of a person so entitled, or unless an affidavit by the claimant, or a certificate by counsel appearing for him, stating that he is in the service and thus entitled to the benefit of the act, is filed with the appearances. Such proceedings shall be limited to the issues of the existence of such persons and their rights if any . . .
A decree by the court that no person is then subject to or is entitled to the benefits of the Soldiers’ and Sailors’ Civil Relief Act. . . shall forever bar the persons named in the bill or complaint from complaining that such foreclosure ... is invalid under said act.
Section 2 of the Massachusetts statute directs that a decree as described in §1, if recorded with the registry of deeds and city or town clerk’s office, “shall be conclusive evidence of compliance with the provisions of said Soldiers’ and Sailors’ Civil Relief Act ... as against all persons,” except “persons whose interests appeared of record prior to the recording of the notice of said proceeding unless they were named as defendants or had notice of said proceeding.”
The purpose and effect of the Massachusetts statutory provisions are plain on their face: they provide a mechanism by which a foreclosing parly, or another party affected by a foreclosure sale (such as apurchaser), may prevent any subsequent uncertainty as to the validity of the foreclosure under the Servicemembers Civil Relief Act.[15] The foreclosing party accomplishes that result by filing an action seeking a decree that the mortgagor is not entitled to the protections of the Act. Unless the mortgagor responds with a showing that he or she is so entitled, a decree issues, which conclusively establishes that the Act does not bar the foreclosure. The proceeding does not and cannot address any other issue. See Beaton, 367 Mass, at 388; see also CitiMortgage, Inc. v. Blanchette, Mass.App.Ct. No. 11-P-941, Rule 1:28 Slip. Op. at *2 (Nov. 20, 2012); Aurora Loan Serus., LLC v. Kiah, 81 Mass.App.Ct. 1117, 2012 WL 6660992, at *1 (2012); GMAC Mortgage, LLC v. Reynolds, Land Ct. No. 09 MISC 400318, 2010 WL 7746836, at *1-2 (Nov. 30, 2010); Randle v. GMAC Mortgage, LLC, Land Ct. No. 09 MISC 408202, 2010 WL 3984714, at *6-7 (Oct. 12, 2010).
Because the proceedings undertaken to comply with the Servicemembers Civil Relief Act are so limited, and do not address any issues affecting the propriety of a foreclosure other than the military status of the mortgagor, such proceedings “are not in themselves mortgage foreclosure proceedings in any ordinary sense. Rather, they occur independently of the actual foreclosure itself and of any judicial proceedings determinative of the general validity of the foreclosure.” Beaton, 367 Mass, at 390. The statute “simply establishes procedures whereby mortgagees, in addition to taking all steps necessary to foreclose, can make certain that there will be no cloud on the title following the foreclosure as a result of an interested party having been in, or just released from, military service and thus under the protective umbrella of’ the federal Act. Beaton, 367 Mass, at 390. “If a foreclosure were otherwise properly made, failure to comply with the 1940 Relief Act would not render the foreclosure invalid as to anyone not entitled to the protection of that act.” id.[16]
Count I of the complaint, as discussed supra, alleges that each of the defendant banks has violated G.L.c. 93A, §2, by “initiat[ing] foreclosure proceedings on properties ... for which it was not the actual holder of the mortgage.” The legal viability of this claim depends, at least in part, on whether Massachusetts law requires that a party who “initat[es] foreclosure proceedings” be the “actual holder of the mortgage,” and on what action constitutes “initiat[ing] foreclosure proceedings” for that purpose. The Supreme Judicial Court addressed aspects of these questions in U.S. National BankAss’n v. Ibanez, 458 Mass, at 639-55. The issue presented in that case was whether an entity that had conducted foreclosure sales, at which it had itself purchased the foreclosed properties, and which had received assignment of the mortgages only after completion of the sales, had acquired valid title. Id. at 638. The Court held that it had not, because it had not strictly complied with the requirement of G.L.c. 244, § 14, that the “mortgagee,” or a person acting under its authority, exercise the power of sale, and give the notices required by that provision. Id. at 647-48. “Because only a present holder of the mortgage is authorized to foreclose on the mortgaged property, and because the mortgagor is entitled to know who is foreclosing and selling the property, the failure to identify the holder of the mortgage in the notice of sale may render the notice defective and the foreclosure sale void.” Id. at 648. Ibanez thus established that a foreclosure sale is effective to transfer title only if the actual holder of the mortgage, or one who acts in the name of the holder and under that person’s authority, gives the notices required by statute, and conducts the sale; it is not sufficient for the foreclosing entity to acquire the mortgage after the fact. Id.[17]
Here, as discussed supra, the complaint alleges that the defendant banks “initiated foreclosure proceedings” before acquiring the mortgages on the properties foreclosed. As indicated supra, the complaint does not clearly indicate what it means by “initiated foreclosure proceedings,” except insofar as the illustrative examples convey meaning. In some of those examples, according to the facts alleged, the bank acquired the mortgage after it had given the statutory notices, but before the sale. In others, it acquired the mortgage after the notices and after the sale. In those instances, Ibanez makes clear that the sales did not comply with the statutory requirements, and were thus ineffective to foreclose the equity of redemption *80 and transfer title. It does not necessarily follow, however, that such sales violated G.L.c. 93A; that raises a separate question, which the Court will address infra.
In some of the other examples set forth in the complaint, the defendant bank acquired the mortgage before either giving notice under c. 244, §14, or conducting a sale, but after having either initiated, or in some instances completed, a proceeding under the Servicemembers Act. Nothing in Ibanez suggests that such conduct violates any statutory requirement, or that it voids a subsequent sale that otherwise complies with the requirements of c. 244. To the contrary, as noted supra, Ibanez expressly recognizes the limited nature of the Servicemembers Act proceeding, and its separateness from the foreclosure process under a power of sale in accord with c. 244. Id. at 646. The Land Court has repeatedly held that a party “need not be the current holder of the note or the mortgage to have standing in a Servicemember’s case,” as long as that party has a legally cognizable interest in the title to the properly. HSBC Bank USA, N.A. v. Matt, Land Ct. No. 10 MISC. 421195, 2010 WL 7746837, at *1-2 (July 8, 2010), app. pend’g, SJC No. 11101; GMAC Mortg. LLC v. Reynolds, Land Ct. No. 09 MISC 400318, 2010 WL 7746836, at *1 (Nov. 30, 2010); U.S. Bank, NA., v. Hardon, Land Ct. No. 10 Mise. 429997, 2010 WL 7746839 at *1-2 (Aug. 20, 2010).[18]
The Attorney General nevertheless argues that defendants violated the law by initiating proceedings under the Servicemembers Act before holding the mortgagés on the properties in issue. The Attorney General emphasizes that “one who sells under a power [of sale] must follow strictly its terms.” Ibanez, 458 Mass, at 646, quoting Moore u. Dick, 187 Mass. 207, 211 (1905). Those terms, the Attorney General points out, include compliance with “the statutes relating to the foreclosure of mortgages by the exercise of the power of sale.” G.L.c. 183, §21. The obligation of strict compliance with statutory requirements is beyond dispute. But that point does not assist in identifying and interpreting the applicable statutory requirements. In particular, the general principie of strict compliance does not identify any statutory provision that would support the Attorney General’s theory with respect to proceedings under the Servicemembers Act.
The Attorney General relies on G.L.c. 244, §35A. As discussed supra, that section, which took effect in May of 2008, grants the mortgagor a right to cure prior to acceleration of the loan, subject to a specified exception, along with a right to notice of the right to cure. Section 35A requires demonstration of compliance with that requirement in an affidavit “filed by the mortgagee, or anyone holding thereunder, in any action or proceeding to foreclose on such residential real property.” By referring to an affidavit “filed by the mortgagee” in a “proceeding to foreclose,” the Attorney General argues, the legislature made the filing of a Servicemembers Act proceeding a mandatoiy part of the foreclosure process, and required that the party bringing that proceeding in fact be the mortgagee, and no one else, and so certify by affidavit filed with the court in that proceeding.
This Court is not persuaded. Under the Attorney General’s reading, §35A overrules longstanding authority, set forth supra, holding that the Servicemembers Act proceeding is not part of the foreclosure process, and indeed is not required as a prerequisite to a valid exercise of the statutory power of sale. Under that reading, the enactment of §35A went well beyond granting mortgagors the additional protection of a right to cure and to notice thereof; it transformed the Commonwealth’s long-recognized non-judicial foreclosure process into a judicial process. Certainly the legislature had the power to do so if it chose. But this Court will not attribute to the legislature the intent to make such a substantial change without any explicit indication of that intent.
Aside from the sweeping nature of the change that would result from the Attorney General’s interpretation, that interpretation ignores significant aspects of the language of §35A. First, §35A does not expressly reference proceedings under the Servicemembers Act; its reference is to “any action or proceeding to foreclose.” That language, within a section of c. 244, may refer to an action under c. 244, §1, seeking a judgment of possession. Moreover, §35A explicitly recognizes the authority of a “creditor” to “begin foreclosure proceedings,” and defines creditor to include a mortgage servicer and its employees and agents, as well as anyone else who “holds or controls” a mortgage loan, “partially, wholly, indirectly, directly, or in a nominee capacity.” Section 35A goes on to require an affidavit filed by the mortgagee or “anyone holding thereunder.” The statute does not define “mortgagee,” but in context, and particularly in light of the broad definition of creditor, the word appears intended to encompass whoever exercises the powers of the mortgagee “or anyone holding thereunder"—that is, anyone who falls within the statutory definition of a creditor.
Further, §35A does not, by its terms, require the filing of any action; rather, it requires the filing of an affidavit “in any action or proceeding” that may be filed. Thus, §35A leaves open the possibility that a foreclosing party may choose to forego a Servicemembers Act proceeding, taking the risk that the foreclosure may prove void if the mortgagor is entitled to the protections of that Act. As the case law cited supra recognizes, that approach does not violate any obligation, and a foreclosure conducted in that manner is effective unless the mortgagor is entitled to the protection of the Servicemembers Act. Section §35A may add an additional risk of invalidity if the creditor has not provided notice of the right to cure and waited the required period, but nothing in the Attorney General’s complaint alleges that any of the defendants has ever failed to meet these requirements with respect to any foreclosure since the effective date of §35A.
In the absence of any statutory provision requiring that one filing a Servicemembers Act complaint hold the *81 mortgage at the time of filing, such filing by one who does not then hold the mortgage is not unlawful. The Court therefore concludes that count I, insofar as it rests on the defendants’ having filed Servicemembers Act proceedings with respect to properties on which they did not then hold the mortgages, fails to state a claim, and must be dismissed.
With the exception of Bank of America, this ruling does not resolve the motions as to count I, because the facts alleged include at least one instance in which each issued notice under c. 244, §14, and/or conducted a foreclosure sale, prior to holding the mortgage in issue. Under Ibanez, those foreclosure sales were ineffective to foreclose the equity of redemption and transfer valid title. The question remains whether in conducting defective foreclosure sales the defendants violated G.L.c. 93A. The Attorney General contends that they did, by virtue of the violation of c. 244, §14, as construed in Ibanez. In this regard, the Attorney General relies first on 940 C.M.R. §3.16(3), which designates as a violation of c. 93A any “act or practice” that “fails to comply with existing statutes, rules, regulations or laws . . . intended to provide the consumers of this Commonwealth protection.” As defendants point out, however, courts have rejected the theory that every statutory violation is per se a violation of c. 93A. See Daviris v. Petros, 442 Mass. 274, 281 (2004) (clinician’s failure to obtain informed consent does not violate c. 93A); Whitehall Co. v. Merrimack Valley Distrib. Co., 56 Mass.App.Ct. 853, 858 (2002) (“not every statutory violation amounts either to unfair competition or to an unfair practice”).
To allege a violation of c. 93A, §2, a plaintiff must allege facts sufficient to establish conduct “that is within at least the penumbra of some' common-law, statutory, or other established concept of unfairness,” that is “immoral, unethical, oppressive, or unscrupulous,” and that causes substantial harm to consumers or to the public. Commonwealth v. Fremont Investment & Loon, 452 Mass. 733, 743 (2008); MiRiken & Co. v. Duro Textiles, UJC, 451 Mass. 547, 563 (2008); PMP Associates v. Globe Newspaper Co., 366 Mass. 593, 596 (1975). Here, as the banks point out, the Attorney General does not allege that any of the foreclosed properties was not properly subject to foreclosure as a result of default by the mortgagor. In the absence of such an allegation, no unfairness to any mortgagor appears. See Ibanez, 458 Mass, at 655 (Cordy, J., concurring). The complaint does, however, allege that foreclosures that were invalid due to statutory violations have left properties with clouded title. That situation may have caused substantial harm to third-party purchasers, who may have reasonably relied on the belief that the foreclosing banks had complied with statutory requirements. See Ibanez, 458 Mass, at 656 (Cordy, J., concurring) (decision does not address “the effect of the conduct of the banks such as the plaintiffs here, on a bona fide third-party purchaser who may have relied on the foreclosure title of the bank and the confirmative assignment and affidavit of foreclosure recorded by the bank subsequent to that foreclosure but prior to the purchase by the third party”); see also Bevilacqua v. Rodriguez, 460 Mass. 762, 772 (2011) (third-party purchaser did not obtain valid title where foreclosure sale was void because seller did not hold mortgage).[19] Invalid foreclosures, resulting in properties with clouded title, may also have caused harm to the real estate market as a whole, and thereby to the public. That is sufficient at this stage, in the Court’s view, to allege violation of G.L.c. 93A §2.
The banks argue that their conduct cannot have violated any established legal standard, because they complied with industry standards, as construed by their attorneys. They point to Title Standard No. 58(3), issued by the Real Estate Bar Association for Massachusetts (REBA), which declares: “A title is not defective by reason of . . . [t]he recording of an Assignment of Mortgage executed either prior, or subsequent, to foreclosure where said Mortgage has been foreclosed, of record, by the Assignee.” The Supreme Judicial Court considered the REBA standard in Ibanez, and concluded that, to the extent that it might be understood as authorizing post-foreclosure assignment of the mortgage (rather than merely post-foreclosure recording of an assignment previously given) it was inconsistent with statutory requirements. 458 Mass, at 653. As noted supra, the Court further concluded that its interpretation of the statutory requirements was well-established, despite the REBA standard, so that no occasion arose for prospective-only application. Id. at 655. In this circumstance, although a showing that the defendants acted in accord with the industry norm, as reflected in the REBA standard, or on advice of counsel based on that standard, might bear on the issue of unfairness, the mere existence of the REBA standard does not render the allegations of the complaint insufficient to state a claim under c. 93A.
As to Bank of America, the examples set forth in the complaint consist entirely of instances in which the bank received assignment of the mortgage after it had initiated a Servicemembers Act proceeding; the facts alleged do not identify any instance in which the bank conducted a foreclosure sale, or issued any of the notice^ required under c. 244, at a time when it did not hold the mortgage. The bank therefore contends that it is entitled to dismissal on that ground. The Attorney General responds that the specific instances alleged are merely illustrative examples, and that the complaint alleges, in general terms, that all of the defendant banks conducted foreclosures in violation of statutory requirements. Such general, conclusoiy allegations do not meet the pleading requirements established in Iannacchino, 451 Mass, at 636. The Court will therefore dismiss count I as to Bank of America.[20]
B. Counts v. and VI: Registered Land
As set forth supra, count v. alleges that all defendants violated G.L.c. 93A, §2, in that, “(u]pon information and belief’ they “assigned mortgages of registered *82 land without registering such assignments” (¶249). Count VI seeks a declaration “that G.L.c. 185, §67 requires that the instruments transferring the beneficial interest in a mortgage secured by registered land must be registered” (¶254). As discussed supra, references in the complaint to “the beneficial interest in a mortgage” appear to be intended to refer to the promissory note secured by the mortgage. See Eaton, 462 Mass, at 576-77 (“the holder of the mortgage holds the mortgage in trust for the purchaser of the note, who has an equitable right to obtain an assignment of the mortgage”), citing Ibanez, 458 Mass, at 652.
Defendants seek dismissal of count v. for failure to state a claim. First, they point out that, beyond the generalized allegation asserted “on information and belief’ as to all defendants, the complaint fails to allege any facts to support the claim. Although the complaint describes the MERS system generally, characterizing it as intended to “avoid registration and recording requirements,” the complaint includes no specific allegations that any named defendant assigned or received assignment of a mortgage on any registered land without registering such assignment. Defendants further contend that, even if they had failed to register assignments of mortgages on registered land, the only effect of such failure would be that the assignments would not “take effect upon the title” to such properties, pursuant to G.L.c. 187, §67, not that defendants would incur liability under c. 93A. The Court agrees with the first point, and therefore will not reach the second.
As discussed supra, to state a claim sufficient to withstand a motion to dismiss, a complaint must set forth “ ‘allegations plausibly suggesting (not merely consistent with)’ an entitlement to relief, in order to ‘reflect [a] threshold requirement . . . that the plain statement possess enough heft to sho[w] that the pleader is entitled to relief.’ ” Iannacchino u. Ford Motor Co., 451 Mass, at 636. The general assertion, “on information and belief,” that all defendants engaged in conduct described in general terms, without reference to any specific acts on the part of any defendant, does not “plausibly suggest ... an entitlement to relief.”
The Attorney General asserts in her memorandum that defendants have acknowledged failing to register assignments of mortgages, particularly in arguments made by Wells Fargo in Wells Fargo Bank, N.A. v. LaRace, the companion case to Ibanez, with respect to unrecorded securitization documents. See 458 Mass. at 651. But neither LaRace nor Ibanez involved registered land. As the Supreme Judicial Court recognized in Ibanez, as of the date of that decision assignment of mortgages on recorded land was not required to be recorded, or in recordable form, 458 Mass. at 654.[21] But that rule of law hardly establishes that the defendants named here have made a practice of failing to register assignments of mortgages on registered land. The Court will dismiss count v. for failure to state a claim on which relief may be granted.
As to count VI, defendants contend that the cited statute, c. 185, §67, does not require registration of transfers or assignments of mortgage notes. Again, the Court agrees. The statute provides:
The owner of registered land may mortgage it by executing a mortgage deed. Such deed may be assigned, extended, discharged, released in whole or in part, or otherwise dealt with by the mortgagee by any form of deed or instrument sufficient in law for the purpose. But such mortgage deed, and all instruments which assign, extend, discharge and otherwise deal with the mortgage, shall be registered, and shall take effect upon the title only from the time of registration.
This section, by its plain terms, and like the land registration system overall, concerns legal title, not beneficial ownership or equitable rights. See Commonwealth Elec. Co. v. McCardeÜ, supra, 450 Mass, at 50 (‘The principal reason for establishing a land title registration system pursuant to G.L.c. 185 is to provide individuals with a means of ensuring that titles to land are indefeasible and certain”); Deacy v. Berberian, 344Mass. 321,328 (1962); Morehctrdtv. Dearborn, 313 Mass. 40, 47 (1943). Section 67 requires registration of a mortgage deed, as well as any assignment, discharge, or release of a mortgage deed, because those instruments affect title. See Eaton, 462 Mass, at 575 (mortgage transfers title), citing Ibanez, 458 Mass, at 649. Since registration establishes title, all instruments purporting to affect title to registered land must be registered, and any such instrument “shall take effect upon the title only from the time of registration.” The meaning is clear: an instrument purporting to affect title has no such effect unless and until it is registered.
The Attorney General contends that transfers of notes secured by mortgages on registered land must be registered because they are “instruments which... otherwise deal with the mortgage.” The argument takes the statu-toiy phrase out of its context within a list of instruments that affect title. See Awuah v. Coverall North America, Inc., 460 Mass. 484, 496 (2011) (“When a statute lists elements in a series, the rules of statutory construction guide us to construe general phrases as restricted to elements similar to specific elements listed”). A promissory note, and any assignment thereof, does not affect title, and does not purport to do so; its effect, rather, is to evidence a debt. The holder of a note secured by a mortgage has the right to receive payment of the debt, along with “an equitable right to obtain an assignment of the mortgage,” so as to enforce the right to payment. Eaton, 462 Mass, at 576. But “the mere transfer of a mortgage note does not carry with it the mortgage,” id., and thus does not affect title to the mortgaged property. For that reason, as the Supreme Judicial Court observed in Eaton, “our recording system has never required mortgage notes to be recorded.” 462 Mass, at 588; see also Wells Fargo Bank, N.A. v. McKenna, Land Ct. No. 11 MISC 447455, 2011 WL 6153419, at *2 n.l (Dec. 8, 2011) (There never has been recording of notes at the registries of deeds at any time”).
*83 Nothing in c. 183, §67, or in any other authority, suggests that notes secured by mortgages on registered land are different in this respect from those secured by mortgages on recorded land. To the contrary, the Land Court itself has recognized the MERS system in its published Guidelines on Registered Land. Land Court Guideline No. 42 (Revised February 27,- 2009) acknowledges that MERS “acts as the mortgagee of record and, as such, is the nominee for both the servicer and the beneficial owners of mortgage loans in the public land records.” The Guideline instructs that “the holder of the mortgage on the encumbrance sheet will be listed as Mortgage Electronic Registration System, Inc., without reference to the institution for which MERS is holding the mortgage, whether or not the original mortgage or any subsequently filed instrument affecting the mortgage makes reference to the party for whose benefit MERS is holding the mortgage.” The Land Court thus recognizes the function of MERS as essentially the trustee for the benefit of the note-holder, whose right to receive payment the mortgage secures, but who holds no title to the real estate. See Culhane v. Aurora Loan Services of Nebraska, 826 F.Sup.2d 352, 371 (D.Mass. 2011) (“the MERS system fits perfectly into the Massachusetts model for the separation of legal and beneficial ownership of mortgages”); see generally Roberts v. Roberts, 419 Mass. 685,688 (1995) (regardingnominee trust as owner of real estate for benefit of beneficiaries named in unrecorded schedule of beneficiaries).[22]
The Court therefore concludes that the defendants’ failure to register transfers of notes secured by mortgages was not unlawful. Since the complaint adequately pleads the existence of an actual controversy on the issue, the parties are entitled to a judgment so declaring.[23]
CONCLUSION AND ORDER
For the reasons stated, the Court orders as follows. The JPMorgan Chase Bank, N.A.’s Motion to Dismiss the Complaint is: ALLOWED as to count I insofar as that count alleges violation of G.L.c. 93A, §2, based on the defendant’s initiation of proceedings under the Servicemembers Act prior to holding the mortgage on the properties in issue; ALLOWED as to count V; and otherwise DENIED. Certain Defendants’ Joint Motion to Dismiss Plaintiffs Complaint is: ALLOWED as to count I insofar as that count alleges violation of G.L.c. 93A, §2, based on the defendant’s initiation of proceedings under the Servicemembers Act prior to holding the mortgage on the properties in issue, and in its entirely as to defendant Bank of America; ALUDWED as to countV; and otherwise DENIED. As to Count VI, upon the parties’ submission of an appropriate proposed form of declaration, the Court will enter a declaration to the effect that G.L.c. 183, §67, does not require registration of transfers or assignments of notes secured by mortgages on registered land.
The clerk is directed to schedule a conference pursuant to Mass.R.Civ.P. 16 at the earliest available date.

he stipulation of dismissal, filed on April 12, 2012, occurred in the context of a global settlement of litigation between a number of state attorneys general and national banks regarding mortgage foreclosure practices.

Defendant JPMorgan Chase Bank, N.A. (Chase), has filed its own separate motion to dismiss. The other defendants have filed a joint motion to dismiss. Two of them, Bank of America and Wells Fargo, have also filed supplemental memoranda addressing, the particular facts set forth in the complaint relating to them. The defendants other than Chase have also filed a motion to strike certain paragraphs of the complaint.

The Court accepts all well-pleaded factual allegations of the complaint as true for purposes of the present motions, but disregards legal conclusions, which make up a substantial proportion of the 57-page complaint. See Sisson v. Lhowe, 460 Mass. 705, 706 (2011); Welchv. Sudbury Youth. Soccer Ass’n, 453 Mass. 352, 354 (2009); Schaer v. Brandéis Urdu., 432 Mass. 474, 477 (2000); Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991). As reflected in the motion to strike and opposition thereto, the parties have somewhat different views as to which allegations of the complaint bear on the remaining counts. For present purposes, the Court considers all factual allegations that appear to provide any potential support to the remaining counts.

Rhe complaint does not define this phrase, which appears repeatedly. Based on the factual allegations that the complaint refers to as “illustrative examples,” and the Attorney General’s arguments in connection with the present motions, the Court understands the phrase as referring to a complaint filed in the Land Court pursuant to St. 1943, c. 57, as amended by St. 1959, c. 105; St. 1982, c. 127; St. 1990, c. 496; and St. 1998, c. 142, to establish that the mortgagor is not entitled to the protections of the Servicemembers Civil Relief Act, 50 U.S.C. App. §§501 etseq.

The first example describes conduct of LaSalle Bank, which the complaint alleges that Bank of America “acquired” in October of 2007. The complaint does not elaborate on the nature of the acquisition or the subsequent corporate structure, and Bank of America does not presently assert any argument regarding its relationship with LaSalle Bank. For present purposes, the Court will assume that conduct of LaSalle Bank after its acquisition by Bank of America is attributable to the latter.

With respect to the Sturbridge properly, the complaint alleges that Wells Fargo received assignment of the mortgage on April 18, 2008, and conducted the foreclosure sale eighteen days later, on May 5,2008. Thus, if Wells Fargo published notice at least 21 days before the sale, as required by G.L.c. 244, § 14, it did so before becoming the holder of the mortgage.

As noted supra, “MERS” refers collectively to MERSCORP, Inc., which the complaint identifies as “a corporation whose sole purpose is to serve as mortgagee of record and nominee for the beneficial owners of mortgage loans,” and its parent entity, Mortgage Electronic Registration System, Inc.

Registration for registered land, pursuant to G.L.c. 185, §§26-118; recording for recorded land, pursuant to G.L.c. 183. Regarding registration generally, see Commonwealth Elec. Co. v. McCardell, 450 Mass. 48, 50 (2007) (‘The principal reason for establishing a land title registration system pursuant to G.L.c. 185 is to provide individuals with a means of ensuring that titles to land are indefeasible and certain”).

The complaint uses the phrase “beneficial interest in the mortgage” repeatedly, but does not define it. Based on the examples given, and the arguments made in the Attorney General’s memorandum, the Court understands the phrase, as used in the complaint, to refer to ownership of the promissory note.

As noted supra, counts n, III, and IV have been dismissed by stipulation, along with prayers for relief 2.a.vi, 2.a.vii, and 2.a.viii. The three dismissed counts are labeled “Unfair or Deceptive Acts or Practices in Violation of G.L.c. 93A, §2: Failing to Identify the Present Holder of the Mortgage in Notice of Sale” (count II); “Unfair or Deceptive Acts or Practices in Violation of G.L.c. 93A, §2: Falsely Representing Status as Holder of Mortgage” (count III); and “Unfair or Deceptive Acts or Practices in Violation of G.L.c. 93A, §2: Deceptive Loan Modification and Servicing Practices.” Appended to the stipulation is the parties’ “Agreement,” in which they recite a description of the remaining counts. The Agreement describes count I as consisting of “allegations arising out of the Servicer’s initiation or advancement of foreclosure proceedings where the foreclosing entity was not the actual holder of the mortgage or lacked the legal authority to foreclose on the mortgage (’the Ibanez claims’).” See US. Bank Nat’l Ass’n v. Ibanez, 458 Mass. 637 (2011). The Agreement refers to counts v. and VI as “the Registered Land Claims.” The Agreement provides that “neither the Ibanez claims nor the Registered Land Claims, as currently pleaded in the Complaint, shall be released as part of the Settlement,” but that “Massachusetts agrees not to seek to amend the Action in any way that will broaden beyond the Ibanez Claims and the Registered Land Claims the scope of the conduct alleged or the remedy sought,” and that ”[t]he Commonwealth shall not seek in the Action to vacate any completed foreclosure or seek relief that would have the effect of or require the vacating of a foreclosure, and the parties agree that the current relief sought in the Complaint does not have that effect.”

See note 11 supra.

The “power of sale” referenced in this provision is that provided in a mortgage instrument, as authorized by G.L.c. 183, §21, which provides;
The following “power” shall be known as the “Statutory Power of Sale,” and may be incorporated in any mortgage by reference:
But upon any default in the performance or observance of the foregoing or other condition, the mortgagee or his executors, administrators, successors or assigns may sell the mortgaged premises ... by public auction on or near the premises then subject to the mortgage . . . first complying with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale, and may convey the same by proper deed or deeds to the purchaser or purchasers absolutely and in fee simple; and such sale shall forever bar the mortgagor and all persons claiming under him from all right and interest in the mortgaged premises, whether at law or in equity.

Section 17B of c. 244 adds another notice requirement, applicable where the note-holder seeks to preserve the opportunity to sue on the note to recover for a deficiency: in such a case, the mortgagee must send notice by registered mail at least twenty-one days before the sale, notifying “the defendant sought to be charged with the deficiency” of the intent to foreclose “together with awaming ofliability for the deficiency,” and must execute an affidavit reflecting the giving of such notice within thirty days after the sale. Here again, the statute provides a form of notice, but requires only that the notice be “substantially” in the form provided. The form is in the first person, reciting “my intention” to foreclose “the mortgage held by me,” and providing for signature by “C. D. Holder of said mortgage.”

The Land Court has permitted an interested party to utilize the statutory procedure after completion of the foreclosure sale to establish the validity of the foreclosure under the ■federal Act. See GMAC Mortg. LUC v. Reynolds, 2010 WL 7746836, at *2.

Both the statutory language itself, and this language from Beaton, treat the proceeding as prudent but optional on the part of the foreclosing party. See also Federal National Mortgage Association v. Perkins, Land Ct. No. 12 MISC 460283, 2012 WL 5306220, at *1 (Oct. 29, 2012) (foreclosure sale not invalid based on lack of prior judgment in Servicemembers action); GMAC Mortgage, LLC v. Reynolds, Land Ct. No. 09 MISC 400318, 2010 WL 7746836, at *1 (Nov. 30, 2010) (“[S]ervicemembers actions are not part of mortgage foreclosure proceedings at all. Strictly speaking, they are not even necessary”). But see Eaton v. Fed Nat’lMortg. Ass’n, 462 Mass. 569, 580 n. 14 (2012) (“Although foreclosure under the power of sale does not require judicial authorization, a foreclosing mortgagee is required to initiate a ‘limited judicial procedure . .. aimed at certifying that the mortgagor is not a beneficiary of the Servicemembers [Civil Relief] Act’ ”) quoting Ibanez, 458 Mass, at 646 (2011). In light of the statutory language and these decisions, the Court reads the quoted language from Eaton as indicating only that the Servicemembers Act proceeding is necessary to establish the validity of the foreclosure under that Act, not that every foreclosing mortgagee is required by law to initiate such a proceeding.

In announcing that conclusion, the Court rejected the suggestion that it was making new law, which should apply only prospectively. To the contrary, the Court observed, ”[t]he legal principles and requirements we set forth are well established in our case law and our statutes. All that has changed is the plaintiffs’ apparent failure to abide by those principles and requirements in the rush to sell mortgage-backed securities.” Id. at 654-55.

This Court recognizes that decisions of the Land Court, like those of this Court and of other departments of the Trial Court (as well as the federal courts on matters of state law), have neither binding effect nor precedential value. The Court nevertheless considers Land Court decisions as offering the views of judges who have particular familiarity with Massachusetts law and practice on matters involving real property. See Amberwood Dev. Corp. v. Bd of App. of Boxford 65 Mass.App.Ct. 205, 209 (2005); Teschke v. Keller, 38 Mass.App.Ct. 627, 632 (1995).

The banks argue that no purchaser (or title insurer) could have reasonably relied, because the public record reflects ownership of mortgages. Ibanez refutes that contention. As the Court there recognized, as of the time of that decision, assignment of a mortgage was not required to be either recorded, or in recordable form, to confer on an as-signee the statutory authority to foreclose. 458 Mass, at 651, 654. Recent legislation has changed that circumstance as of November 1, 2012. See St. 2012, c. 194, §1.

Wells Fargo contends that it is in the same position. As set forth supra, at p. 7, however, the facts alleged are sufficient to support the inference that, in at least one instance, Wells Fargo published the notice of foreclosure required by c. 244, §14, before receiving assignment of the mortgage.

See note 19, supra, regarded legislation effective November 1, 2012.

The Attorney General suggests that the absence of any provision for registration (or recording) of an original note does not undermine its theory that a transfer of the note must be registered, because the original mortgage identifies the lender, who holds the note in the first instance. As the allegations of the complaint expressly recognize, however, MERS often serves as the mortgagee in the original mortgage, as nominee for the lender. In those instances, the lender (and original note-holder) need not and may not be identified in the public record.

Defendants other than Chase suggest in their reply memorandum that this Court lacks jurisdiction over count VI because the declaration the Attorney General seeks would affect title to registered land, and would therefore fall within the exclusive jurisdiction of the Land Court pursuant to G.L.c. 185, §l(al/2). The declaration this Court will issue on count VI will resolve the question of statutory interpretation raised, but will not affect title to any property.